## ROBINSON *v.* SOUTHERN NATIONAL BANK.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 137. Argued December 20, 21, 1900. — Decided February 25, 1901.

The State National Bank of Vernon, Texas, having become insolvent, Robinson was appointed receiver, and the Comptroller made an assessment upon the stock and its owners. This action was brought to recover such assessment from the Southern National Bank. One hundred and eighty shares of the stock so assessed were the property of one Curtis. His certificates were deposited with the Southern Bank as collateral, but the stock remained in his name, and so continued till the commencement of this suit. *Held*, that the case was not one in which the bank was estopped by having assumed an apparent ownership of the stock.

By the mere act of bidding in this stock at a nominal price, the Southern National Bank is not to be regarded as having subjected itself to liability as the real owner thereof.

As between the Southern National Bank and Curtis and Thomas, the bank is under no legal or equitable obligation to assume or answer for the assessment made by the Comptroller on the stock.

*California Bank* v. *Kennedy*, 167 U. S. 362, and *Concord Bank* v. *Hawkins*, 174 U. S. 364, followed; but this court is not disposed, at present, to push the principle of these cases so far as to exempt such banks from liability as other shareholders, when they have accepted, and hold stock of other

corporations as collateral security for money advanced (which is not decided).

There is a presumption in such cases against any intention on the part of the lending bank to become an owner of the collateral shares.

THIS was an action brought in the Circuit Court of the United States for the Southern District of New York by Robinson, as receiver of the State National Bank of Vernon, Texas, a national banking association, against the Southern National Bank of New York, likewise a national banking association, to recover the amount of an assessment made by the Comptroller of the Currency upon the stock of the State National Bank, of which the defendant bank was alleged to be the owner of one hundred and eighty shares.

The principal facts out of which the controversy arose were as follows:

On January 20, 1893, one W. G. Curtis was the owner of one hundred and eighty shares of the capital stock of the State National Bank, of the par value of $100 each, and which stood in his name on the books of the bank, and for which he held the usual certificates. On that day one A. U. Thomas and the said Curtis borrowed from the Southern National Bank the sum of $15,000, for which they gave their promissory note, payable four months after date. The note recited that the makers of the note had "deposited with said bank as collateral security for the payment of this or any other liability or liabilities of ours to said bank now due or to become due, or that may be hereafter contracted, the following property, viz.: One hundred and eighty shares of the capital stock of the State National Bank of Vernon, as evidenced by certificate No. 97, 150 shares; certificate No. 98, 30 shares—the market value of which is now $18,000."

The note contained the usual powers to sell, in case of default in payment, the securities at public or private sale, with the right on the part of the bank to become the purchaser thereof at such sale.

The note was not paid when due, and on August 1, 1893, the defendant bank notified Curtis and Thomas by telegraph that the stock would be sold on the 8th day of August, 1893. On

August 7, 1893, it advertised in the New York papers that the stock would be sold at noon of August 8, at the public exchange in New York. The sale took place at public auction, and the stock was struck off to the defendant for the sum of ·$20, the defendant being the highest bidder. The defendant then paid the auctioneer the said sum of $20, and afterwards received back from him that sum less his fees. That was the place where and the way in which sales of collateral to such notes were then made in New York.

The certificates of stock at that time remained in possession of the defendant bank, but the stock was not transferred to the defendant bank upon the books of the State National Bank, but continued to stand in the name of Curtis. The defendant bank never voted upon the stock, nor received any dividends thereon.

The State National Bank suspended payment on or before July 21, 1893, and was in possession of the United States bank examiner until September, 1893, when it resumed and continued business as usual, until August 18, 1894, when it finally closed, and the plaintiff Robinson was subsequently appointed receiver.

On August 10, 1893, the Southern National Bank of New York brought an action in the district court of Wilbarger County, Texas, against Curtis and Thomas, in which the complaint recited the fact of the sale of the collateral securities, and that the proceeds of the sale, to wit, twenty dollars, had been applied as a credit on said note, and demanded judgment for the balance of the note remaining unpaid, with interest and costs.

Subsequently, Curtis and Thomas answered, and, among other things, claimed that the Southern National Bank had taken the stock that had been placed with it as collateral by purchasing the same at the sale, that the said stock was worth the sum of $18,000 at the date of said sale, and the same so taken at said sale was in full satisfaction for said note.

They likewise filed a cross petition, in which they alleged that the sale by the Southern National Bank of the collateral stock was made improperly and in fraud of the defendants, and was a conversion of said stock to the use of said bank, which operated not merely to discharge the said note, but to give the defendants Curtis and Thomas a right to be compensated to

the extent of the difference between the amount due on the note and the amount of the value of the stock, which they averred to be $18,000.

In an amended petition the Southern National Bank traversed the allegations of the cross petition, denied that they had, in effect or by operation of law, taken said collateral stock in full satisfaction of said note, and alleged that said stock had always' been in its possession as collateral, that it had always been ready and willing, and was ready and willing, to return to said Curtis the said stock upon payment of said note, and thereupon tendered to said defendants the said stock upon payment of said note.

Subsequently, and while these proceedings were pending, the defendants Curtis and Thomas proposed to the Southern National Bank that if the bank would credit them with the value of the stock at the rate of sixty cents on the dollar they would confess judgment for the balance, some five thousand dollars. This offer was made on August 7, 1894, and on August 9, 1894, the Southern National Bank, by letter and telegram, stated that this proposition would be accepted. Nine days thereafter the State National Bank of Vernon failed, and thereupon the Southern National Bank declined to stand by the proposal of the defendants to confess a judgment if credited with the stock at the rate of sixty cents on the dollar.

Whereupon the defendants Curtis and Thomas filed a further plea, or statement by way of cross petition, setting up said proposition and acceptance as an accord and satisfaction, and tendering judgment accordingly for amount sued for upon credit of $10,800 being given them, and they prayed that said agreement should be carried out, and for general relief.

The case then came on for trial, and was submitted, on all questions of law, as well as of fact, to the court without the intervention of a jury. The court found that the Southern National Bank was entitled to recover on said note the sum of sixteen thousand two hundred dollars, principal and interest on the note sued on up to August 9, 1894, the time the agreement of compromise was entered into by and between the plaintiff and defendants; that under said agreement said defendants

were entitled to a credit of ten thousand eight hundred dollars; and that the plaintiff was entitled to recover from the defendants the sum of five thousand seven hundred and fifty-one dollars, with interest thereon from date, and decreed accordingly.

The plaintiff, the Southern National Bank, was thereupon allowed an appeal to the Court of Civil Appeals of the Second Supreme Judicial District of Texas.

In that court the judgment of the trial court was reversed, and in the opinion the following statement was made:

" Did the compromise agreement prevent the further prosecution of the suit? Its terms were quite brief.

"August 7, 1894, one M. J. Tompkins wired appellant: ' Thomas says will confess judgment if you will allow sixty cents for stock;' to which appellant replied by letter and telegram on August 9, 1894, among other things requesting Tompkins to say to Thomas that his proposition would be accepted. Nine days thereafter the State National Bank of Vernon failed. Then it was that appellant, soon after learning of the failure, declined to stand to the agreement; and, through other counsel, employed about that time, sought to avoid it. When the agreement was made the court at Vernon, though not in open session, had not adjourned for the term, and the cause was continued to the next term, without any confession of judgment. When it finally came to trial the court held appellant to the agreement, and, upon the offer-of Curtis and Thomas to comply with its terms, rendered judgment accordingly, deducting $10,800 from the sum due on the note, and giving judgment for the rest.

" It is clear that there had been no conversion of the stock, as alleged by Thomas and Curtis. The sale thereof was regular, and in accordance with the terms of the contract of hypothecation, and the court so held. Besides, appellant tendered the stock in court for Thomas and Curtis, thereby waiving its right as purchaser thereof. We then have the case of an agreement on the part of a creditor to accept a judgment by confession for a less sum than is due, which agreement the creditor withdraws, and takes steps to avoid, before it had been in any respect performed or acted on by the debtor. Upon the sole

ground of such agreement on the part of the creditor, and the tender of performance by the debtor, judgment for the full amount of the debt is denied. We cannot distinguish this from an ordinary case of accord without satisfaction. Tender of performance in such a case will not defeat the recovery claimed. It is manifest that the agreement was not intended to be taken in lieu of the note sued on, or any part thereof. It was the confession of judgment thereon that was to entitle Thomas and Curtis to the reduction, and not their agreement to confess judgment. It is not the case of a compromise entered into by which a pending suit is to go off the docket, and the parties look to the terms of the compromise as a substitute for the original contract and preëxisting status. . . . We therefore adopt the trial court's conclusions of fact in so far as they are not in conflict with the conclusions stated above, and reverse, and here render judgment in favor of appellant against Thomas and Curtis for the full amount claimed, decreeing the bank stock to them as tendered."

In the case in the Circuit Court of the United States, the plaintiff having offered in evidence the record of the case in the state courts, also offered in evidence a certificate from the clerk of the district court of Wilbarger County, Texas, in the following terms:

"I, W. B. Townsend, clerk of the district court of Wilbarger County, Texas, do hereby certify that, in the case of the Southern National Bank of New York against W. G. Curtis and W. U. Thomas, No. 688 on the docket of the said district court, the plaintiff, on the trial of said cause, tendered into court and to the said defendants the certificates of stock issued by the State National Bank of Vernon to W. G. Curtis, numbered 97 and 98 respectively, the first being for one hundred and fifty shares of the capital stock of said bank, and the other for thirty shares of the capital stock of said bank, which certificates of stock were filed by the clerk of said court on the 8th day of August, 1895, and have ever since remained on file in said cause in said court, and are on file at this time; that they have never been taken away by said Curtis and Thomas, or either of them, and that Curtis and Thomas, nor any one acting for them or

either of them, have not taken said stock away, . . . and that said stock now remains on file in said district court of Wilbarger County, Texas, as appears of record in said cause."

The plaintiff having rested, the defendant put in evidence a certified copy of the decree rendered by the Court of Civil Appeals, containing, among other things, the following:

"It is the order of this court that the appellant, the Southern National Bank of New York, do have and recover of and from the appellees, W. G. Curtis and A. W. Thomas, the sum of fifteen thousand dollars, with six per cent interest thereon from the 20th day of January, 1893, together with all their costs in this behalf expended. And it further appearing to this court that the said W. G. Curtis and A. W. Thomas delivered to the appellant, the Southern National Bank of New York, 180 shares of the capital stock of the State National Bank of Vernon as collateral security for the note sued hereon, it is further ordered that said 180 shares of capital stock be turned over to them upon payment of this judgment as per the tender of the appellant, and that in default of such payment said stock be sold as under execution, and the proceeds applied to the payment of this judgment."

The defendant bank further put in evidence two letters, dated respectively February 15 and September 27, 1894, written by the cashier of the Southern National Bank to A. W. Thomas and to R. P. Elliot, attorney for Curtis and Thomas, in the following terms:

"Feb. 15th, 1894.

"A. U. Thomas, Esq.,
          "210½ Main Street, Houston, Texas.

"Dear Sir: I beg to acknowledge the receipt of your letter of Feb. 8th, and to inform you that a copy of it will be forwarded to our counsel, Mr. H. C. Thompson, with the request that he will make known to us the proposition submitted to him by you. You can rest assured that when this is received it will have our closest attention.

"We never had any disposition to oppress you. All that we wanted and now want is the money owed us by Mr. Curtis and

yourself. When that is paid under the terms of your note the collaterals will be surrendered by us. We manifested in every proper way a disposition to help you, and it was only when you failed to meet us that we were forced to resort to legal measures. If you will furnish a purchaser for the stock at seventy-five or eighty cents on the dollar, the price suggested by you in a former letter, and will carry out the rest of your proposition, I should be willing to recommend to our board to accept it. The litigation must necessarily be tedious, and loss must certainly come to both of us by reason of counsel fees, costs, etc.

"I shall be glad to hear further from you.

"Respectfully yours,

(Signed) "J. D. ABRAHAMS, Cashier."

"NEW YORK, Sept. 27th, 1894.

"R. P. ELLIOT, Esq.,

"Attorney at Law, Vernon, Texas.

"Dear Sir: I have seen our counsel and shown him your letter of the 14th. He agrees that we ought to have a copy of the amended answer setting up an alleged compromise. As soon as that comes I will show it to him and get his opinion then.

"At present I may say in reply to your question 'What do you want with the stock?' that we do not want the stock and never have wanted it. We attempted to sell the stock here after default of payment of the note, as the terms of the note permitted us to do, but we virtually bid in the stock ourselves and retained possession of it. We informed our former attorney at Vernon, and tried to impress it upon him, that we did not wish the stock and would give the debtors every benefit from it, notwithstanding the attempted sale. If we could have held the stock against the debtors we would not have done so, and we testified to that effect in the depositions now on file in your courts. If the sale was not valid we still held the stock under the original terms of the note, and we were from the beginning perfectly willing for our former attorney at Vernon to take that course in the courts. If the stock turned out to be worth anything we would get the benefit of it to the extent of our claim, and any balance would belong to the debtor.

"The fact is, our counsel here thought the attempted sale did nor amount to a sale, for the reason that no officer of the bank was present with the auctioneer and that we simply hold the stock as collateral, as we did before the attempted sale. We were perfectly willing that the matter should so stand in the court at Vernon. Our attorney there seemed desirous of having the stock sent on there to be foreclosed, notwithstanding the attempted sale here. We saw no use in that procedure, for if the sale here was not a sale we had full power, under the terms of the note, to make such a sale here as would be absolutely valid. We got our counsel here to prepare a brief on the subject, a copy of which was sent to our former attorney at Vernon. We have since sent a copy of it to you. You will see by the authorities there cited that we have ability to make a perfect sale of the property here without going to the expense of selling it under foreclosure proceedings in Texas. Moreover, our counsel advises us that he sees no use in making any sale of the stock at all. We are in just as good position in holding the stock as collateral as we would be by holding it by legal title. Upon reflection you will doubtless agree with us and our counsel here. We have not considered that we hold the stock under the alleged compromise, for no compromise was perfected.

"We would like to have you tell us what you think of that defence when you send us the amended answer containing it. We will then get our counsel here to give us his opinion.

"We knew nothing of the fact stated by you that Tompkins stood in with Thomas all the time. Do you think there was a conspiracy between Thomas and Tompkins to effect a compromise with us?

"As to whether the stock will be assessed, will depend upon the action taken by the Comptroller of the Currency. If the bank resumes, perhaps he will permit it to do so by reduction of capital without assessment. Nobody can form any opinion as to the probability of an assessment until it is known what action the Comptroller will take, and whether the directors of the bank will be able to meet his terms.

"Very truly yours,

(Signed)      "J. D. ABRAHAMS, Cashier."

The defendant bank then called as a witness Jesse D. Abrahams, who testified that he was cashier of the Southern National Bank of New York during the years 1893 and 1894; that he was familiar with the transactions connected with the loan to Curtis and Thomas upon the State National Bank of Vernon, Texas; that the stock was put up and sold at auction for the nominal sum of $20, and bid in by the bank; that it was never transferred on the books of the State National Bank; and, under objection and exception by the plaintiff's counsel, the witness further testified that, at the time of the sale of the collateral security and its nominal purchase by the defendant bank, it was not the intention of the officers of the bank to take title adversely to the pledgors, but that the purpose of the sale was to make it the introduction to the suit for the amount due on the note.

The plaintiff then asked the court to direct a verdict for the plaintiff, which the court refused to do, and plaintiff excepted. The plaintiff then asked to go to the jury upon the issue as to whether the defendant was the real owner of the stock described in the complaint, which the court refused, and plaintiff excepted. The plaintiff then asked to go to the jury on the issues in the action, which the court refused, and plaintiff excepted.

In obedience to the direction of the court the jury then rendered a verdict for the defendant, and plaintiff excepted.

The case was then taken to the United States Circuit Court of Appeals for the Second Circuit, and the judgment of the Circuit Court was affirmed. 94 Fed. Rep. 964. A writ of error by the direction of the Comptroller of the Currency was then allowed, and the case brought to this court.

*Mr. Chase Mellen* for plaintiff in error.

*Mr. William B. Hornblower* for defendant in error.

Mr. Justice Shiras, after making the above statement, delivered the opinion of the court.

By section 5139 of the Revised Statutes of the United States,

it is provided that the capital stock of banking associations shall be divided into shares of one hundred dollars each, and be deemed personal property, and transferable on the books of the association in such manner as may be prescribed in the by-laws or articles of association; that every person becoming a shareholder by such transfer shall, in proportion to his shares, succeed to all the rights and liabilities of the prior holder of such shares; and that no change shall be made in the articles of association by which the rights, remedies or security of the existing creditors of the association shall be impaired.

By section 5151 it is provided that the shareholders of every national banking association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares; and by section 5234 the Comptroller of the Currency is authorized to appoint a receiver of an insolvent national bank, who shall, if necessary to pay the debts of such association, enforce the individual liability of the stockholders.

In the present case the State National Bank of Vernon, Texas, having become insolvent, Robinson, the plaintiff in error, was appointed receiver thereof on September 24, 1894; on February 1, 1895, the Comptroller made an assessment upon the capital stock and the owners of the same equal to the par value of the stock; and on October 26, 1898, the receiver brought an action in the Circuit Court of the United States for the Southern District of New York against the Southern National Bank of New York as an alleged shareholder liable to pay its proportionate share of such assessment.

The reported decisions show that there are two classes of cases of this character—one, wherein the liability has been enforced against a party defendant in whose name the stock was registered on the books of the bank, regardless of the question whether he was, in point of fact, the owner of said stock; and the other, where the liability has been enforced against the real owner of the stock, although the stock stood registered on the books in the name of a third person.

In the former class, the liability is said to be created by the act of the party in whose name the stock is registered, in holding himself out as a stockholder, and thus inviting others to deal with the bank and become creditors, relying on the reputation and financial strength of the nominal stockholders.

Cases are also to be found in the books where transfers, made by shareholders in anticipation of a bank's insolvency, to irresponsible persons, have been held to be a fraud on the statute, and inefficacious to relieve the original holder from liability. *Bowden* v. *Johnson*, 107 U. S. 251; *Richmond* v. *Irons*, 121 U. S. 27; *Pauly* v. *State Loan Co.*, 165 U. S. 619; *Matteson* v. *Dent*, 176 U. S. 521.

The conceded facts in the case are that the one hundred and eighty shares of the stock embraced in the assessment were the property of W. G. Curtis, in whose name they were registered on the books of the bank, and who held the certificates therefor; that the certificates were deposited with the defendant bank as collateral; but that the stock remained in the name of Curtis, and so continued to be at the time of the bringing of this suit. It, therefore, follows that the case is not one in which the defendant bank is estopped by having assumed an apparent ownership of the stock.

The important inquiry is whether, by the mere act of bidding in the stock at a nominal price, the Southern National Bank of New York must be regarded as having subjected itself to liability as the real owner thereof.

The facts to be considered in connection with this question are as follows:

On January 20, 1893, Curtis and Thomas borrowed from the Southern National Bank of New York the sum of $15,000, giving therefor their joint note for that amount, payable four months after date, and as collateral security, two certificates for one hundred and eighty shares of the capital stock of the State National Bank of Vernon, standing in the name of Curtis. The note was not paid at maturity. On July 21, 1893, the State National Bank suspended, and was in possession of the United States bank examiner from that date until September 14, 1893, when it reopened for business and continued to

transact business as usual until August 18, 1894, when it finally suspended.   The fact of such suspension and that the bank examiner was in charge was known to the Southern National Bank on July 26, 1893.

On August 1, 1893, the defendant bank notified Curtis and Thomas by telegraph that the stock would be sold on August 8, 1893, and it was so sold.   On August 10, 1893, the Southern National Bank brought suit against Curtis and Thomas in the district court of Wilbarger County, Texas.   Curtis and Thomas filed pleas, and also a cross petition, averring that the sale by defendant bank of the stock pledged was not made in pursuance of the powers granted in the written pledge and was a fraud of the rights of the defendants; that by reason of said fraudulent sale the defendants had suffered damage to the amount of fifteen thousand dollars, which they asked to be set off against the note sued on, and also that it should be adjudged that they had a right to recover the difference between the amount of the note and the value of the pledged stock, etc.

Subsequently Curtis and Thomas filed an additional plea or statement by way of cross petition, in which they allege that since the filing of their first cross petition the Southern National Bank had agreed to credit them with the amount of $10,800 for the stock at the rate of sixty cents on the dollar, and that, in consideration thereof, they, Curtis and Thomas, had agreed to confess judgment for the balance due on the note, which they averred they were willing and ready to do.

In and by amended petitions the Southern National Bank claimed that the said bank stock had been, at all times since the execution and delivery of the note sued on, in its possession and under its control, and that it had always been ready and willing to return said bank stock upon payment of said note, and tendered in open court said bank stock upon payment of said note.   At the trial in the district court of Wilbarger County that court held that the alleged agreement by the Southern National Bank to credit the defendants with the stock at the rate of sixty cents on the dollar was binding, and entered judgment accordingly in favor of the Southern National Bank in the sum of $5751.   On appeal by the Southern

National Bank to the Court of Civil Appeals of Texas, the judgment of the district court was reversed, and judgment was entered in favor of the bank for the full amount claimed, and decreeing the bank stock to Curtis and Thomas as tendered. A portion of said decree was in the following terms:

"And it further appearing to the court that the said W. G. Curtis and A. W. Thomas delivered to the appellant, the Southern National Bank of New York, 180 shares of the capital stock of the State National Bank of Vernon as collateral security for the notes sued hereon, it is therefore ordered that said 180 shares of capital stock be turned over to them upon payment of this judgment, as per the tender of the appellant, and that in default of such payment said stock be sold as under execution, and the proceeds applied to the payment of this judgment."

It further appears that said certificates of stock remain on file in the said district court of Wilbarger County, not having been taken away by said Curtis and Thomas.

It has therefore been finally adjudicated between the Southern National Bank and Curtis and Thomas that there had been no conversion of the stock as alleged, and that the Southern National Bank, having waived its right as purchaser thereof, the stock has been decreed to be the property of Curtis and Thomas, subject to the payment by them of the judgment in favor of the bank. As between those parties, then, it cannot be pretended that the Southern Bank is under any legal or equitable obligation to Curtis and Thomas to assume or answer for the assessment made by the Comptroller on the stock. Having denied the validity of the auction sale, and forced an issue on that question, they cannot now, after a decision in their favor as respects the ownership of the stock, be heard to allege that the stock is really owned by the Southern National Bank, and that Curtis has been released from his liability as a shareholder.

If this be so, what foundation is there on which to base a recovery against the Southern National Bank in favor of the receiver of the State National Bank?

It is admitted that Curtis has always been and is liable as the

registered owner of the stock; that, at no time, nor in any way, has the Southern National Bank held itself out to the State National Bank, or to its creditors, as a shareholder therein; and it is admitted that the Southern National Bank never received dividends and never voted on said stock.

It was held in *Pauly* v. *State Loan & Trust Company,* 165 U. S. 606, that where stock was transferred in pledge, and the pledgee, for the purpose of protecting his contract, caused the stock to be put in his name on the books as pledgee, such a registry did not amount to a transfer to the pledgee as owner, and that he therefore was not liable, although the pledgor might continue to be so. When, therefore, it was decided, in the suit on the note, that the bank did not, by bidding in the stock at the auction sale for a nominal price, cease to be the pledgee, and that the stock remained the property of Curtis, how can it be said that the receiver, as respects that question, is in any better position? It may be said, indeed, that he was not a party to that suit, and is therefore not bound by the judgment; and it may be conceded that there might be cases where, by reason of fraud or collusion between the nominal shareholder and the real owner, the receiver would not be precluded, but might maintain his suit independently.

But, plainly, this is no such case. Indeed, the record of the Texas suit was put in evidence by the receiver, the plaintiff in error, and there is no effort to impeach the good faith of the bank in bringing that suit or in tendering the stock, nor can any objection be made to the soundness of the conclusions reached by the Court of Civil Appeals.

This court has held in *California Bank* v. *Kennedy,* 167 U. S. 362, and *Concord National Bank* v. *Hawkins,* 174 U. S. 364, that it is not competent for national banking associations to invest any portion of their capital permanently in the stock of another corporation, and that they are not estopped from setting up such want of power against suits to enforce liability for assessments made by the Comptroller of the Currency. While not disposed, as at present advised, to push the principle of these cases so far as to exempt such banks from liability as other shareholders, where they have accepted and hold stock of other corporations as collateral security for money advanced,

(a proposition which we withhold from decision,) we think there is a presumption in such cases against any intention on the part of the lending bank to become an owner of the collateral shares. This was the view taken in the case of *Frater, Receiver*, v. *Old Nat. Bank of Providence*, 86 Fed. Rep. 1006, and 103 Fed. Rep. 391, where it was held, after full consideration, that it is only in clear cases that a pledgee, on the ground of_ estoppel, can be subjected to liability for an assessment on national bank stock, instead of the owner, upon whom the legal obligation rests; and that where stock stood upon the books of a bank in the name of a person as cashier of another national bank, the designation suggested a qualified or representative holding, which put all persons on inquiry, and the bank of which the holder was cashier is not estopped to show that it held the stock as collateral only—at least, in the absence of evidence that the insolvent bank or its creditors in fact acted in reliance on its supposed ownership.

Exception was taken in the Circuit Court to a question allowed to be put to the cashier of the defendant bank, whether at the time of the sale of the collateral security, and at the time of the nominal purchase for $20, it was the intention of the officers of the bank to take title adversely to the pledgors?

Whether it was competent to get at the intention of the bank officers in bidding in this stock at a nominal price, by examining one of such officers, might not be clear, if this were a contest between pledgor and pledgee. But that question was, as between them, closed by the record in the Texas suit.

In the present case the question was an immaterial one, particularly as the case was not submitted to the jury, and as the other undisputed facts of the case showed that, as matter of law, the Southern National Bank was not, in any proper sense, the real owner of the stock. We agree with the courts below in thinking that the pledgee was at liberty to waive the nominal title thus acquired and to notify the pledgors, as it did, that it still held the stock merely as collateral. We think that it is clear that the transaction, as it is admitted to have occurred, did not deceive or injure the insolvent bank or its creditors.

The judgment of the Circuit Court of Appeals is

*Affirmed.*