### HULITT v. OHIO VALLEY NAT. BANK.

(Circuit Court of Appeals, Sixth Circuit. May 11, 1905.)

No. 1,386.

1. NATIONAL BANKS—ASSESSMENT AGAINST SHAREHOLDERS — OWNERSHIP OF STOCK.

As a general rule, the question of liability for an assessment on the shares of an insolvent national bank depends upon who was the actual owner of the stock when the operations of the bank were suspended.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Banks and Banking, §§ 916–918.]

2. SAME—PLEDGED STOCK.

For the purposes of the national banking act, the pledgor of stock not transferred on the books is to be regarded as the owner until and unless something further transpires which operates to transfer the ownership to another.

[Ed. Note.—For cases in point, see vol. 6, Cent. Dig. Banks and Banking, § 920.

Rights and liabilities of pledgees of corporate stock, see note to Frater v. Old Nat. Bank, 42 C. C. A. 135.]

3. SAME—LIABILITY OF PLEDGEE—DIVESTING OWNERSHIP OF PLEDGOR.

Defendant bank held stock of a national bank as collateral security for a note at the time the maker of the note died leaving it unpaid. Subsequently defendant caused the stock, which was indorsed in blank by the pledgor, to be transferred on the books of the bank to one of its employés who was irresponsible, and who paid no consideration for the transfer, but in fact held the stock for defendant. Defendant then

made an indorsement on the note of a sum as proceeds of a sale of the stock made on the day of the transfer, and proved the balance due on the note against the estate of the pledgor, and was paid dividends thereon. *Held*, that such transaction operated to transfer the ownership of the stock from the pledgor's estate to defendant, which was liable for an assessment thereon on the subsequent failure of the issuing bank.

In Error to the Circuit Court of the United States for the Southern District of Ohio.

Henry M. Huggins, for plaintiff in error.

J. J. Muir and Robert Ramsey, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. This suit was brought by the plaintiff in error, who is the receiver of the First National Bank of Hillsboro, Ohio, to recover an assessment levied by the Comptroller of the Currency upon the shareholders of the bank on account of their extraordinary liability to creditors, the bank having become insolvent. The defendant in error is charged as the owner of 20 shares of the stock of the Hillsboro bank. To the petition the defendant filed an answer making a general denial of the plaintiff's allegations in respect to its ownership of the stock. The case was heard in the court below upon an agreed statement of facts, which is embodied in a bill of exceptions, and is as follows:

(1) On March 18, 1893, one Overton S. Price procured a loan from the defendant in the sum of ten thousand ($10.000) dollars, giving his promissory note therefor, together with certain collateral securities recited in the body of said note, a copy of which note, with all indorsements thereon, is hereto attached, made part hereof, and marked "Exhibit A."

(2) On December 25, 1893, said Price deceased, leaving said note at that time past due and unpaid. No payments have ever been made upon said note, except as hereinafter set forth. There is still a balance remaining due and unpaid upon said note.

(3) On June 18, 1894, the defendant made a formal transfer of the pledged stock of the First National Bank of Hillsboro, Ohio, and the Dominion National Bank of Bristol, Va., to one Henry Oetjen, an employé of the defendant, who was pecuniarily irresponsible. Said shares were transferred upon the books of said banks, respectively, and new certificates therefor issued in the name of said Oetjen, and delivered to him on July 7, 1894. No money consideration passed to the defendant for said transfer, and none was expected, nor did the defendant at that time credit said note with any sum by reason of said transfer, nor was any credit at that time indorsed upon said note or entered in defendant's books. Said Oetjen indorsed in blank the certificates of stock which were issued to him.

(4) Said transfer was made upon the understanding and agreement between said Oetjen and the defendant that the former should hold said stock as security for the indebtedness of the estate of said Price upon said note, applying any amounts which he might realize from said stock as credits upon said note; that in pursuance of this agreement and understanding said Oetjen subsequently paid the defendant, on account of said note, a sum of money received by him from said Dominion National Bank on account of a reduction in the capital stock, and also the amount of certain dividends which he received from time to time upon said Dominion National Bank stock, until the same was finally sold by said Oetjen, whereupon the proceeds of said sale were likewise applied by him upon said note.

(5) That on February 19, 1896, the defendant prepared proof of claim against the estate of said Price, and at that time, believing the stocks trans-

ferred to said Oetjen to afford a reasonable security for said Exhibit A to the amount of forty-four hundred and eighty-four ($4,484.00) dollars, indorsed the credit for that amount upon said note, which appears upon Exhibit A, and filed its proof of claim against said estate for the balance of the indebtedness upon said note; that no consideration was paid for said credit and the same was not entered upon defendant's books; that all dividends arising upon said distribution of the estate of said Price were applied upon said note.

(6) That said First National Bank of Hillsboro, Ohio, continued to do business until July 16, 1896; that from the date of said transfer the stock in said bank at all times appeared on the books of said bank in the name of said Oetjen; that there was nothing on the books of said bank at any time to connect this defendant with said stock or to indicate that this defendant had any interest whatever in the same; that defendant at no time performed any act of ownership of said stock, or exercised, or attempted to exercise, any of the rights of a stockholder of said bank or of the Dominion National Bank of Bristol, Va., unless the acts above set forth were, according to legal intendment, of that character. Defendant caused said shares to be transferred to said Oetjen because it was unwilling to assume the risk of the statutory liabilities of a stockholder in respect to said shares.

Exhibit A.

"$10,000.                              X.  Cincinnati, O., March 18th, 1893.

"Ninety days after date I promise to pay myself or order, ten thousand dollars for value received, payable at the office of A. C. Conklin & Co., having deposited or pledged as collateral security for the payment of this note,

| | | |
|---|---|---|
| 50 shrs. Citizens' Nl. Bk. Stock, Hillsboro, O. ..............shrs. | $100 |
| 20 shrs. First Nl. Bk. Stock, Hillsboro, O. ..................shrs. | 100 |
| 40 shrs. Hillsboro Gas Light Co. Stock......................shrs. | 50 |
| 30 shrs. Dominion Nl. Bk. Stock, Bristol, Va...............shrs. | 100 |
| 100 shrs. Bk. of Camden Stock, Camden, O..................shrs. | 100 |
| 200 shrs. Bk. of Lynchburg Stk., Lynchburg, O..............shrs. | 50 |

"And I hereby give to the holder thereof full power and authority to sell or collect at my expense all or any part or portion thereof, at any place, either in the city of Cincinnati, or elsewhere, at public or private sale at holder's option, on the non-performance of the above promise. and at any time thereafter, and without advertising the same or otherwise giving to me any notice. In case of public sale, the holder may purchase without being liable to account for more than the net proceeds of such sale.

"O. S. Price."

Indorsed: "C. S. Price."

"Forty-four hundred and eighty-four ($4,484.00) dollars paid on account of within note June 18, '94, being proceeds of sale of 30 shares stock Dominion Natl. Bank and 20 shares of stock 1st National Bank of Hillsboro, O."

The court gave judgment for the defendant, to which the plaintiff excepted. No opinion was filed by the trial judge, but counsel assumed, and we suppose correctly, that the conclusion of the court was that the defendant was not the owner of the shares. That is the essential question in the controversy. The proposition that, in the absence of exceptional circumstances, the question to be settled is, who was the actual owner of the stock at the time when the operations of the bank were suspended, is established by repeated decisions of the Supreme Court. Recent decisions to this effect are: Pauly v. State Loan and Trust Co., 165 U. S. 606, 17 Sup. Ct. 465, 41 L. Ed. 844; Rankin v. Fidelity Insurance, etc., Co., 189 U. S. 242, 23 Sup. Ct. 553, 47 L. Ed. 792.

In dealing with the present case we are limited to the facts contained in the agreed statement. We can infer no other facts unless they are necessary inferences from those agreed. It has been often

said that that which is necessarily implied is as much a part of the agreement as if it were written into it. And this rule of interpretation is applied to the most solemn instruments, inter partes, as well as to statutes. But the implication must be one arising from legal intendment, and not merely a deduction of fact.

For the purposes of the banking act the pledgor of stock is to be regarded as the owner until and unless something further transpires which operates to transfer the ownership to another. The pledgee may, without himself becoming liable to the contingencies of ownership, have the stock transferred in blank by the pledgor, as was done in this case; but in such case the pledgor does not cease to be the owner in the sense intended by the law, and until the ownership is in some way divested from the pledgor the latter continues to stand for the stock.

In a suit of this character we are required to have regard to the relations of those who are concerned with the stock and their dealings with it, and to ascertain who, as between such persons, is the actual owner of it, provided, of course, there is no transfer to the pledgee on the stock book of the bank, and no fraud upon creditors is found in their conduct. From the facts agreed, we think that probably, upon the authority of Anderson v. Philadelphia Warehouse Co., 111 U. S. 479, 4 Sup. Ct. 525, 28 L. Ed. 478, it should be held that the defendant did not become the owner of the stock and so liable to be assessed on account of it, down to the time of the transaction which occurred during the settlement of the estate of Price in the probate court. After the death of the pledgor, Price, and on June 18, 1894, the defendant, transferred the stock to Oetjen without consideration given or expected. It was transferred to him on the stock book of the Hillsboro bank. Oetjen indorsed the new certificates in blank. He was an employé of the bank and irresponsible, and in fact the defendant continued to control the stock notwithstanding the formal transfer to him.

While the Hillsboro national bank was continuing to do business, and on February 19, 1896, the defendant filed a claim against the estate of Price, in the proper probate court, for the amount due on the note, less the sum of $4,484, which it had indorsed as a sum "paid on account of within note June 18, '94, being proceeds of sale of 30 shares stock Dominion Natl. Bank and 20 shares of stock 1st National Bk. of Hillsboro, O." The date, June 18, '94, was the date of the transfer of the stock it made to Oetjen. It is to be inferred that the claim was allowed, as it is stated not only that the claim was filed, but "that all dividends arising upon said distribution of the estate of said Price were indorsed upon said note." Afterwards, on July 6, 1896, the Hillsboro bank ceased to do business.

It is stated in the agreed statement of facts that the transfer of the stock to Oetjen was made upon the agreement and understanding between him and the defendant that he should hold the stock as a security for the indebtedness of the estate of said Price upon the note; but it is not stated that this agreement was made known to the representative of Price's estate. Nor is it stated that the act of the defendant in applying dividends from the estate upon the

note was made known to said representative of the estate. And the maxim applies, "De non apparentibus et non existentibus eadem est ratio."

Counsel for the defendant in their brief advance the following argument:

"It is said that this indorsement was evidence tending to show that the defendant had intended the transfer to Oetjen to be a sale absolute, and not merely by way of security. If that claim were sound, still the court has found that there was no intent of that character."

But the statement of the facts could not be affected by a finding of the court any more than could a special verdict. It is, however, a mistake to say that the court found any facts. The record states that "the court, upon consideration of the pleadings, evidence, and arguments of counsel, finds the issues joined in favor of the defendant." But this means nothing more than that the court found the issues of law in favor of the defendant. The case in all particulars is like that of Supervisors v. Kennicott, 103 U. S. 554, 26 L. Ed. 486, where the court said:

"It is true that in the judgment as entered it is stated that the court found the issue in favor of the plaintiffs; but that, when read in connection with the bill of exceptions, is no more than a declaration that the court found the law to be in favor of the plaintiff on the case as stated."

In presenting and obtaining the allowance of its claim, the defendant represented that it had sold the stock and that it had appropriated the proceeds to the payment of the note, and the adjustment of its claim was made upon that footing. When it is said in the agreed statement "that no consideration was paid for said credit," meaning the indorsement of the $4,484, the interpretation must be that no other consideration "was paid" than such as the transaction itself imports. And granting that, notwithstanding the defendant's representation, there had in fact been no actual sale of the stock, we think the result of the proceedings in the probate court upon the defendant's representation and claim was, as between the Price estate and the defendant, to transfer the ownership of the stock to the defendant for the consideration represented in the indorsement, and that the defendant could not thereafter claim against the estate that it had not appropriated the stock in satisfaction pro tanto of the sum due on the note. It may be that the representative of the Price estate might once have had some remedy to recover the stock, but he has made no claim for relief against the transaction, and it is manifest that he would now have no motive for doing so. The stock has become worse than useless. Whatever the undisclosed motive of the defendant may have been, we think the legal import of what was actually done was that it acquired the stock, and that the estate of Price no longer held it either for the benefits or burdens of ownership. No one could believe that the defendant when its claim was adjusted by the probate court expected to make further answer to the estate for this stock, or intended anything else than a conversion of it into its own property at the price for which it reported the stock sold. It would be unjust for

137 F.—30

it now to cast what has proved to be a disadvantage upon the party whom it dispossessed. The burden of the assessment must fall upon one of these parties, and we think the receiver has made the right selection.

The judgment should be reversed, with costs, and direction given to the court below to enter a judgment for the plaintiff for the amount of the assessment, with interest from May 27, 1897, the time when it became payable.