## PUFAHL v. FIDELITY NAT. BANK OF OKLAHOMA CITY, OKL.

### No. 159.

Circuit Court of Appeals, Tenth Circuit.
April 4, 1930.

26

P. E. Gumm, of Oklahoma City, Okl., and Charles P. Gotwals, of Muskogee, Okl. (John T. Gibson, of Muskogee, Okl., on the brief), for appellant.

Ben Franklin, of Oklahoma City, Okl. (C. B. Stuart and M. K. Cruce, both of Oklahoma City, Okl., on the brief), for appellee.

Before LEWIS, COTTERAL, and McDERMOTT, Circuit Judges.

McDERMOTT, Circuit Judge.

When the City National Bank of Hugo, Okl., failed, 71 shares of its stock stood in the name of H. H. Hayes, an employee of the Finerty Investment Company. Claiming that Hayes held this stock as trustee for the Fidelity National Bank, the receiver came into equity and asked that the defendant be decreed to be the true owner, and that it respond to the statutory liability imposed on stockholders of national banks.

The defendant concedes that Hayes had no beneficial interest in the stock, but denies that it is the owner. It claims that the estate of one Dr. Carter is the owner, and that the defendant bank is but a pledgee; and that Hayes held the stock as an intermediary between Dr. Carter and the defendant.

The law is not in dispute. The actual owner of stock in a national bank must respond to the statutory liability, even if the stock is carried in the name of another. A pledgee, or one who has only a lien on the stock, is not subject to the statutory liability, unless he has permitted himself to be held out as the owner by appearing as the record holder. It follows that a pledgee is not liable because the stock may be carried in the name of an irresponsible third party. Pullman v. Upton, 96 U. S. 328, 24 L. Ed. 818; Germania National Bank v. Case, 99 U. S. 628, 25 L. Ed. 448; Bowden v. Johnson, 107 U. S. 251, 2 S. Ct. 246, 27 L. Ed. 386; Anderson v. Philadelphia Warehouse Co., 111 U. S. 479, 4 S. Ct. 525, 28 L. Ed. 478; Pauly v. State Loan & Trust Co., 165 U. S. 606, 17 S. Ct. 465, 41 L. Ed. 844; Robinson v. Southern Nat. Bank, 180 U. S. 295, 21 S. Ct. 383, 45 L. Ed. 536; Rankin v. Fidelity Trust Co., 189 U. S. 242, 252, 23 S. Ct. 553, 47 L. Ed. 792; Ohio Valley National Bank v. Hulitt, 204 U. S. 162, 27 S. Ct. 179, 51 L. Ed. 423; Early v. Richardson, 280 U. S. 496, 50 S. Ct. 176, 74 L. Ed. ——.

Appellant claims that the trial court's findings on the facts are erroneous. It appears, without dispute, that prior to February, 1923, the defendant bank held the notes of Dr. Carter for $10,000, secured by 66 shares of the bank stock involved. Up to that point, it is clear that the defendant was but a pledgee, and the bank records so disclosed. In February, 1923, the defendant delivered the notes for $10,000 to Dr. Carter, marked "Cancelled." An entry was made on its discount ledger as follows: "Collateral of M. L. Carter taken in lieu of notes, $10,000.00."

On February 28, 1923, the following entry was made on defendant's charge-off record: "In full settlement with Carter and in lieu of notes No. 346 and No. 9920 $10,000.00. Following property taken." The items listed in this entry are two certificates of deposit for $362.32, a $1,500 note and mortgage, and a deed to 20 acres of real estate. These items, together with the $7,100 of stock at par value, equal approximately $10,000. The shares of stock are not listed. At about this time, a dummy note of $10,000 was made by the bank, to replace the notes surrendered to Dr. Carter, and was carried until June 30, 1923, the regular charge-off period, when the entire item was charged off. The items received in February were credited to the stockholders' profit and loss account. Prior to February, 1923, 66 shares of this stock had stood in the name of Dr. Carter; about the time these book entries were made, Dr. Carter assigned these 66 shares, and 5 more, to an employee of the defendant bank, which were later assigned to Hayes, an employee of the Finerty Investment Company.

From these facts, appellant argues that the books and records conclusively show that in February, 1923, there was a change in the quality of the interest of the defendant from that of pledgee to owner; that the entries in its books are consistent only with a change from pledgee to owner.

If the books and records are conclusive, appellant is correct. They do show a cancellation of the indebtedness, and a taking over of the collateral. But the books are not conclusive. The courts will hear any competent evidence bearing on the pivotal question, Who owned the stock?

An officer of the defendant bank testified to the entire transaction; his evidence was substantially uncontradicted, Dr. Carter having died. In substance, he testified that when Dr. Carter's notes became due, his bank wanted payment or additional security; that Carter had become involved; that when he asked for additional security or payment, Carter made a proposition to the effect that he would transfer certificates of deposit for $362.32, a $1,500 mortgage, 5 more shares of bank stock, and 20 acres of land, provided the defendant would surrender his notes duly canceled; permit the 71 shares to be transferred to a third party for the benefit of both Carter and the bank; and would agree that, if said stock could be sold, by either Carter or the bank, the third party should pay Carter the excess of the sale price of the stock, if any, over the balance of Carter's indebtedness to the bank. That both the defendant and "parties at Hugo" had undertaken to sell the stock in accord with the agreement, but without success. If that story is true, Carter remained the actual owner of the stock, subject to a lien of the bank for the balance of the $10,000 indebtedness.

It is true the books do not reflect that transaction; but neither are they inconsistent with it. The defendant properly charged the indebtedness out of the bank's assets, and the entries made are such as would be made if a doubtful debt is charged off. In any event, the trial court heard the witness and believed him. Under well-settled rules, such findings are entitled to great respect, even in equity. United States v. Peterson (10 C. C. A.) 34 F.(2d) 245; New York Life Ins. Co. v. Griffith (10 C. C. A.) 35 F.(2d) 945.

Appellant relies upon Ohio Valley National Bank v. Hulitt, 204 U. S. 162, 27 S. Ct. 179, 51 L. Ed. 423. In that case, an agreed statement of facts, set out in full in (C. C. A.) 137 F. 461, disclosed that the defendant had, without objection, appropriated the stock and given credit therefor on the indebtedness. In First Nat. Bank v. Harris (8 C. C. A.) 27 F.(2d) 117, also relied upon, there had been a formal foreclosure of the lien, and a purchase of the stock at the foreclosure sale, which of course legally changed the relationship of the parties to the stock.

Appellant further contends that the transaction violates an Oklahoma statute requiring notice of the sale of pledged property; and that the surrender of the notes may have worked a fraud upon others. Appellant is not in position to urge the first; there is no evidence to support the second. Furthermore, the sole issue here is, Who owned the stock?

The trial court's findings of fact are supported by the evidence; we find no adequate reason for overturning them. The decree is, therefore, affirmed.