**MITCHELL et al. (ST. JOHN'S ORPHAN ASYLUM, Intervener). v. OTTINGER.**
**No. 6856.**

Circuit Court of Appeals, Third Circuit.
June 29, 1939.

Walter B. Gibbons, of Philadelphia, Pa., for appellant St. John Orphan Asylum.

John Martin Doyle and Daniel C. Donoghue, both of Philadelphia, Pa., for appellants trustees.

Harry S. Abrams, of Philadelphia, Pa., for appellee.

Before BIGGS, CLARK, and BUFFINGTON, Circuit Judges.

BIGGS, Circuit Judge.

James Cleary died November 9, 1922. He left a will, duly admitted to probate, by which he appointed his widow, Marcella Cleary and two of the appellants, Mitchell and Doyle, as his executors and as trustees. By his will Cleary created a trust of his residuary estate. The net income from the trust was to be paid to his widow, Marcella Cleary, during her lifetime, and upon her death the corpus of the trust was to be sold and the proceeds were to be distributed to certain named persons and charitable societies, one of these being St. John's Orphan Asylum, of Philadelphia. The testator gave no power to the trustees to invest the funds of the estate in other than investments legal for trust funds under the laws of Pennsylvania. The will did provide expressly, however, that " * * * my stocks of the Southwestern National Bank of Philadelphia and of the Continental-Title and Trust Company shall not be sold." We are not concerned here with the last named bank or with its stock.

The account of the executors was filed in 1924, was passed, and the balance of the estate was awarded to the accountants "In trust for Marcella Cleary, with remainder over as stated." Among the assets so received by the trustees were sixty-three shares of stock of The Southwestern National Bank of Philadelphia, these shares being those referred to by the testator in his will. The trustees from time to time collected dividends upon this stock and retained such as they were paid.

In the latter part of the year 1928 The Southwestern National Bank of Philadelphia decided to enlarge its capitalization and in the early part of the year 1929 issued subscription warrants to its stockholders of record whereby such might purchase aliquot portions of the additional shares to be issued. Upon March 20, 1929, the trustees, exercising their rights under their warrant, subscribed to and purchased thirty-two shares of the stock of The Southwestern National Bank, paying for the stock with funds from the trust funds. The trustees thereby became the record holders of ninety-five shares of the stock of the bank.

Upon March 3, 1933, The Southwestern National Bank suspended its banking operations and a receiver, the appellee in these proceedings, was duly appointed for it by the Comptroller of the Currency. Upon July 1, 1935, the Comptroller of the Currency made an assessment upon the stockholders of the bank to require each of them to pay an amount equal to the par value of their stock. Thereupon the receiver demanded of Cleary's trustees the sum of $9,500 as the sum due by way of assessment upon the ninety-five shares of stock owned by the trust estate. Upon June 23, 1936, Marcella Cleary died. The suit at bar was brought by the appellee on January 21, 1937, naming as co-defendants the surviving trustees and Marcella Cleary's executor. Subsequently St. John's Orphan Asylum, entitled to a part of the remainder of the trust estate upon Marcella Cleary's death, was permitted to intervene as a party defendant.

No denial is offered by the surviving trustees and Mrs. Cleary's executor as to the liability of the trust estate for the payment of the sum of $6,300 representing the assessment upon the sixty-three shares of the stock of the bank held by Cleary at the time of his death. They contend, however, that they are not liable for the assessment levied upon the stock purchased after Cleary's death. Affidavits of defense raising questions of law, equivalent to common law demurrers, were filed by all the appellants to the appellee's statement of claim. The court below, holding these affidavits to be insufficient in law, gave judgment for the appellee for the full sum demanded in the suit, viz., $9,500. The appeal at bar is taken from this judgment.

The question presented for our consideration is one of law and is whether or not the trustees are liable for an assessment made as we have stated under the circumstances of the case at bar.

It is obvious that the answer to this question must turn upon the ascertainment of a fact, viz., whether or not the trustees are the holders of the thirty-two shares of stock purchased by them after Cleary's death.

The liability of shareholders of the bank for assessment arises under the Act of Congress of December 23, 1913, c. 6,

§ 23, 38 Stat. 273 (12 U.S.C.A. § 64). See Hulitt v. Ohio Valley National Bank, 6 Cir., 137 F. 461; affirmed, 204 U.S. 162, 27 S.Ct. 179, 51 L.Ed. 423; Ericson v. Slomer, 7 Cir., 94 F.2d 437; and Keyes v. American Life & Accident Ins. Co., D.C., 1 F.Supp. 512. The statute states that "The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock * * *". R.S. § 5152 (12 U.S.C.A. § 66) provides that persons holding stock as trustees shall not be personally subject to any liability as stockholders, but that estates and funds in their hands shall be so liable. The foregoing are the applicable Federal statutes upon this subject. It follows therefore that the surviving trustees are liable for the assessment made upon them if by the law of Pennsylvania the surviving trustees are stockholders of the bank as to the thirty-two shares purchased after Cleary's death.

As pointed out by the appellants, Article III, Section 22,[1] of the Constitution of the State of Pennsylvania prohibits the Legislature of that State from passing any statute making legal the investment of trust funds in the securities of private corporations. Despite this constitutional prohibition, however, the General Assembly of Pennsylvania has passed no act prohibiting the investment of trust funds in such securities. The appellants cite the decision of the Supreme Court of Pennsylvania in Commonwealth v. McConnell, 226 Pa. 244, 246, 75 A. 367, 44 L.R.A.,N.S., 889, citing In re Worrell's Appeal, 23 Pa. 44, 48, as authority for the · proposition that in Pennsylvania a guardian or trustee unless authorized by the deed of trust may not invest in the stock of a private corporation at the risk of the cestui que trust and that therefore a trustee is prohibited by the law of trusts of Pennsylvania from making such an investment. In the cited case, however, it appears that a committee for a lunatic invested his ward's estate in the bonds of a private corporation without the authority of the court appointing him. The bonds became worthless and the committee was held liable personally for the loss to the estate. The cited case stands for no broader proposition of law than this. The appellants contend, however, that the purchase of the thirty-two shares of stock by the trustees was in derogation of public policy of Pennsylvania and was void since it was in effect a diversion of trust funds. They therefore deny that the trust estate may now be compelled to suffer further depletion by reason of the assessment made by the Comptroller. The appellants also contend that if the purchase of the stock was not void ab initio it was surely voidable, that is to say, void unless and until it was ratified by the beneficiaries, an event which did not transpire. All the contentions made by the surviving trustees and Marcella Cleary's executor are really one, viz., that it was ultra vires for the trustees to purchase the stock and that therefore they lacked the capacity to hold the stock after they had purchased it. It follows, therefore, say the appellants, that the trustees are not stockholders of the bank.

As to the lack of the capacity in the trustees to purchase the stock, these appellants cite the principle enunciated in cases similar to Forrest v. Jack, 294 U.S. 158, 55 S.Ct. 370, 79 L.Ed. 829, 96 A.L.R. 1457; Pufahl v. Estate of Parks, 299 U.S. 217, 57 S.Ct. 151, 81 L.Ed. 133; and California National Bank v. Kennedy, 167 U.S. 362, 17 S.Ct. 831, 42 L.Ed. 198.

In the Forrest case the Supreme Court held when the administration of the estate of a decedent had been brought to a close and the law of Utah (R.S. of Utah 1933, 102-9-26), where administration was had, did not require the administrator to retain or pay into court property or money to cover possible future liability by way of an assessment not made when the stock of a national bank was distributed to the decedent's widow, that the estate could not be held liable for an assessment. As was stated by Mr. Justice Butler, there was nothing to support the allegation of devastavit.

In the Pufahl case the Supreme Court held that where a receiver for a national bank seeks by a suit brought more than one year after the granting of letters testamentary to recover a claim based upon a stock assessment from the estate of a

---

[1] "No act of the General Assembly shall authorize the investment of trust funds by executors, administrators, guardians or other trustees, in the bonds or stock of any private corporation, and such acts now existing are avoided saving investments heretofore made." Constitution of Pennsylvania, Article III, Sec. 22 (Purdon's Penna.Stats.Ann.Tit. Constitution, page 287).

decedent who had been domiciled in Illinois and who had held the shares up to the time of his death, the receiver was not entitled to make recovery from assets inventoried within one year after the granting of letters testamentary. It also appeared that under the law of Illinois (Section 70 of the Illinois Administration Act, Smith-Hurd Stats. c. 3, § 71, chapter 3, par. 71, Ill. Rev.Stats.1935) claims against a decedent's estate not exhibited to the probate court within one year from the time of the granting of letters, are barred as to property of the deceased which has been inventoried or accounted for by an executor or administrator.

The distinction between the two cases cited and that at bar may be perceived quickly. In the cited cases there were no estates in existence from which the assessments could have been made and the equivalents of statutes of limitations barred recovery. These conditions do not appertain to the case at bar.

In the California National Bank case, the Supreme Court passed upon the following state of facts: The national bank acquired shares of stock in a state bank not as security for a loan but in the ordinary course of business. Both banks became insolvent. Suit was commenced in the state court to adjudge the national bank to be a stockholder in the state bank and as such was responsible to the stockholders of the state bank. The trial court rendered a judgment in favor of the stockholders of the state bank. Upon appeal to the Supreme Court of California the judgment was affirmed. 101 Cal. 495, 35 P. 1039, 40 Am.St.Rep. 69. The judgment was reversed, however, by the Supreme Court of the United States upon the ground that the Federal statutes relative to the creation and existence of national banks constituted the measure of authority within which such banks may act and that the act of the National Bank of California in acquiring the stock of the state bank was a nullity in that it was an ultra vires act incapable even of ratification. The decision in this case turns really upon the extent of the powers of a national banking association as conferred by statutes of the United States.

In Pottorff v. Dean, D.C., 8 F.Supp. 670, 672, the defendant had created a trust for the benefit of her children with the res consisting of 571 shares of the El Paso National Bank stock and 31 shares of the Albuquerque Bank stock. The El Paso National failed and an assessment was levied upon its stockholders. The trustees managing the estate set up by the defendant turned over in extinguishment of the liability of the trust estate the 31 shares of the Albuquerque bank. As, however, the value of those shares was less than the amount of the assessment, the receiver brought suit for the balance against the defendant, the settlor. The court, in giving judgment for the defendant, held nothing more than that if stock is held by one who has become insolvent, the receiver of a national bank cannot go back in the chain of title to fasten liability upon the first solvent prior owner, stating that the correct rule is that there shall be a holder " * * * of sufficient legal capacity to assent to the statutory liability and one who has so assented." This case does not aid the appellant's contentions.

In the case of Seabury v. Green, 294 U.S. 165, 55 S.Ct. 373, 79 L.Ed. 834, 96 A.L.R. 1463, also cited by the appellants, the Supreme Court held that a minor, for want of capacity, may not be subjected to an assessment upon shares of a national bank sought to be distributed to him as part of a decedent's estate. The Court held that the liability for the assessment continued in the estate as a stockholder pursuant to the provisions of R.S. § 5152 (12 U.S.C.A. § 66). The Supreme Court, 294 U.S. at page 168, 55 S.Ct. 373, 79 L.Ed. 834, 96 A.L.R. 1463, denies the validity of the contention that liability upon the part of a stockholder of a national bank may be a creation of state statute or state law. The Court held, however, that the minor could not be subject to the assessment because he lacked capacity to hold the stock. Capacity was determined in accordance with the law of South Carolina.

We conclude therefore, in the light of Seabury v. Green, that the decision of the Supreme Court of Pennsylvania in Re Darlington's Estate, 245 Pa. 212, 91 A. 486, 488, is a determination in respect to the liability of the surviving trustees for the assessment in the case at bar. In the cited case, securities held in a trust estate were converted by the trustee's attorney to his own use. The securities so converted were bonds of private corporations in which funds of the trust estate had been invested. Upon the death of the trustee her account, filed by her executors, came before the Orphans' Court of Chester County for audit. The report of the

auditor appointed by the Orphans' Court refused credit to the trustee for the securities referred to. Credit had been asked by the accountants to the extent of the market value of the securities embezzled. The refusal to grant credit upon the part of the auditor was placed upon the ground that the securities represented investments that the trustee was not authorized by law to have made. The Orphans' Court affirmed the auditor's report. The Supreme Court reversed the decision of that court and allowed credit, stating: "Where a trustee mingles the money of the trust estate with his own, or invests it in his own name, it may be well held that the use of the money was for himself, not for the estate, and, when he is called to account, the only answer he may be permitted to make is the production of the funds. This is because he has committed a breach of the trust. The law, however, does not forbid or make unlawful an investment in securities not of a class expressly authorized by the acts of assembly. Where such an investment is made for the trust estate there is not a breach of trust, although there may be liability for loss by reason of depreciation. The securities in question were purchased for, and held by and in the name of, the trust estate, and there was not a breach of trust in making the investments."

■ This decision, representing the decision of the highest court of Pennsylvania upon the question sub judice, is binding upon us and we therefore accept the ruling as applicable to the case at bar as a determination of the capacity of the trustees to purchase the thirty-two shares of stock of The Southwestern National Bank and to hold them. As stockholders, the surviving trustees are therefore liable for the assessment made by the Comptroller. In stating this conclusion, however, we desire to make plain that our ruling relates only to the liability of the trustees in their capacity as trustees, as defined by R.S. § 5152, and not as individuals. The liability, if any, of the trustees as individuals answerable to the trust estate is not before us and we do not pass upon it.

■ Judgment has been rendered against William J. Mitchell, in his capacity as the executor of the estate of Marcella Cleary, as well as in his capacity as one of the surviving trustees. At common law when there were several trustees, they were considered to hold the trust estate as joint tenants and on the death of any one trustee the trust estate remained vested in the surviving trustee or trustees. In our opinion the rule in Pennsylvania is not otherwise. Nor is the liability of Marcella Cleary's executor enlarged by the provisions of the Act of the General Assembly of Pennsylvania of June 7, 1917, P.L. 447, § 35(b), or any acts amendatory thereof or supplemental thereto, the statutes referred to providing, inter alia, for suit against an executor when the deceased, if alive, would have been personally liable.[2] Marcella Cleary, if she were alive, as one of the trustees would have been properly a party to the suit, since she along with the other trustees would have held title to the stock. Her liability however would not have been a personal liability since such is strictly limited by the provisions of R.S. § 5152. It follows therefore that Mitchell, as Marcella Cleary's executor, is not liable. The facts upon which this conclusion is based are set forth sufficiently in the affidavit of defense filed by Mitchell as executor and it follows that the giving of judgment against him as such executor was error.

■ In respect to the judgment rendered against St. John's Orphan Asylum, which was allowed to intervene as a party defendant by order of the court below, we state that since the fourth paragraph of James Cleary's will requires the remainder and residue of his estate to be sold by the trustees upon the death of his widow and the moneys thus acquired to be distributed in specified proportions to legatees named in the will including St. John's Orphan Asylum, rendering of the judgment against the intervening defendant was error. At no time was it within the contemplation of the testator that St. John's Orphan Asylum should receive shares of stock or property as distinguished from money.

Accordingly, the judgment of the court below is affirmed as to the defendants, Mitchell and Doyle as the surviving trustees under the will of James Cleary, deceased, and is reversed as to Mitchell as executor of the estate of Marcella Cleary and as to St. John's Orphan Asylum, the intervening defendant. The cause is remanded with directions to proceed in accordance with this opinion.

---

2 Act of March 30, 1921, P.L. 55, § 1, Act of May 2, 1925, P.L. 442, § 1 (20 P.S.Pa. § 772).