VANDAGRIFT v. RICH HILL BANK et al.

(Circuit Court of Appeals, Eighth Circuit. August 5, 1908.)

No. 2,820.

1. CORPORATIONS—CONTRACTS ULTRA VIRES—PURCHASE OF STOCK OF ANOTHER CORPORATION—ESTOPPEL.

It is the settled rule of the federal courts that where one corporation acquires stock of another by subscription thereto or by original purchase as an investment, and not in payment of some antecedent debt, when the acquisition of such stock is foreign to the objects of the corporation and is not authorized by law, the contract by which the stock was acquired is ultra vires and void, and the receipt of dividends will not estop the corporation from availing itself of the defense that the contract was void.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §§ 1531–1534.

Acquisition by corporation of stock of other corporation, see note to Anglo-American Land, Mortgage & Agency Co. v. Lombard, 68 C. C. A. 120.]

2. BANKS AND BANKING—NATIONAL BANKS—ASSESSMENT OF STOCKHOLDERS—TRANSFER OF STOCK.

An absolute sale and transfer of the stock of a national bank by a holder thereof cannot subsequently be avoided and the transferror made liable for an assessment upon the stock, unless it is shown, not only that at the time of the transfer the bank was actually insolvent, but that the transferror knew of such insolvency, or had reason to believe it, and that that transfer was intended to evade liability.

In Error to the Circuit Court of the United States for the Western District of Missouri.

John A. Eaton and E. H. McVey, for plaintiff in error.

T. B. Wallace (Thomas J. Smith, on the brief), for defendants in error.

Before VAN DEVANTER, Circuit Judge, and W. H. MUNGER, District Judge.

W. H. MUNGER, District Judge. This action was brought by William J. Butler, receiver of the Bates National Bank of Butler, Mo., against the Rich Hill Bank, Frank McVey, and W. F. Tygard, to recover a stockholder's assessment levied by the Comptroller of the Currency.

In the petition it is alleged, among other things, that the Rich Hill Bank is a banking corporation, organized under the laws of the state of Missouri, and that at the organization of the Bates National Bank said Rich Hill Bank became a shareholder in the same, and owned 40 shares of the par value of $100 each, which stock was held in the name of W. F. Tygard, as trustee for said Rich Hill Bank; that on February

16, 1907, said Tygard, who was president of the Rich Hill Bank, had said stock transferred to Frank McVey, the old certificate being taken up and a new certificate issued in the name of said Frank McVey. It is alleged that Frank McVey was a farm hand in the employ of said Tygard, and was insolvent; that said transfer was made to him in contemplation of the liability on said stock of the Bates National Bank, and for the fraudulent purpose of avoiding the payment of additional liability on said stock; that said transfer was colorable merely, and not made in good faith. It is further alleged in the petition that the Rich Hill Bank received dividends paid upon said stock up to the time of the insolvency of the Bates National Bank, and charges that by reason of this fact said Rich Hill Bank is estopped from denying not only its ownership, but that the contract of ownership was ultra vires. It is further alleged in the petition that on the ———— day of September, 1906, the Bates National Bank went into liquidation, and complainant was appointed receiver by the Comptroller of the Currency of the United States. The answer of the defendant Rich Hill Bank admits its incorporation under the laws of the state of Missouri, and alleges that it had no authority to subscribe for or hold stock in said the Bates National Bank; admits that the officers of the Rich Hill Bank subscribed for said stock in the Bates National Bank for and on behalf of said Rich Hill Bank; but alleges that their acts in that respect were ultra vires. It pleads the following provisions of the statutes of Missouri:

Section 903, Rev. St. 1879:

"Every such corporation shall be authorized and empowered to conduct the business of receiving money on deposit, and allowing interest thereon, and of buying and selling exchange, gold, silver, coins of all kinds, uncurrent money, of loaning money upon real estate or personal property and upon collateral and personal security at a rate of interest not exceeding that allowed by law, and also of buying, selling and discounting negotiable and non-negotiable paper of all kinds as well as all kinds of commercial paper, and for all loans and discounts made such corporation may receive and retain in advance the interest thereon."

Section 915:

"No corporation now existing, nor any hereafter organized under any law of this state, whether general or special, as a bank, or to carry on banking business, shall employ its money directly or indirectly in trade or commerce, by buying and selling ordinary goods, chattels, wares and merchandise, provided that it may use all kinds of property which may come into its possession as collateral security for loans, or in the ordinary collection of debts."

It also pleads section 7 of article 12 of the Constitution of Missouri (Ann. St. 1906; p. 304), as follows:

"No corporation shall engage in business other than that expressly authorized in its charter or the law under which it may have been or may hereafter be organized, nor shall it hold any real estate for any period longer than six years, except such as may be necessary and proper for carrying on its legitimate business."

Other allegations of the petition were denied.

It appears from the evidence that the defendant bank was the owner by subscription of shares of stock in the Bates County Bank, a Missouri corporation; that September 4, 1902, the Bates County Bank was

reorganized as the Bates National Bank, under the laws of the United States. The stock in the Bates County Bank was held in the name of the defendant bank, but at the time of the reorganization of said bank as a national bank the stock in the National Bank was taken in the name of W. F. Tygard, as trustee for the defendant bank, and the books of the defendant bank showed said stock as an asset of such bank. On April 1, 1905, the Secretary of State wrote the defendant bank that it was not authorized under the laws of Missouri to hold stock in any other corporation, and directing it to dispose of such stock as soon as practicable. On the 7th of the same month the Secretary of State again wrote the bank, calling its attention, not only to the statutes of Missouri, but to the constitutional provision heretofore quoted. It is not alleged in the petition that the Bates National Bank was insolvent at the time of the transfer of the stock to McVey, nor does it appear anywhere in the evidence when said National Bank became insolvent. At the trial it was admitted by the parties that the National Bank was declared insolvent by the Comptroller on September 20, 1906. There is no evidence as to the bank being insolvent at the time of the transfer of the stock to McVey. The testimony of the officers of the bank is that the transfer to McVey was because of the said letters received from the Secretary of State and was not with any intent to escape liability, or having in view any future stockholder's liability. Their testimony is specific that at the time of the transfer they had no knowledge that the National Bank was insolvent, but supposed it to be in good financial condition. One semiannual dividend was paid by the National Bank to McVey after the stock was transferred to him. McVey was worth $1,000 and gave his note for the par value of the stock, to wit, $4,000, to the defendant Bank and secured it by the stock as collateral. The dividend which was paid to him, to wit, $160, was credited by the defendant bank upon said $4,000 note.

A demurrer was by the court sustained as to the defendant Tygard and the case by the court dismissed as against McVey. At the close of the testimony plaintiff and defendant each asked for a directed verdict in its favor. The court overruled plaintiff's application for a directed verdict in its behalf, and directed a verdict in behalf of the defendant. Plaintiff brings the case to this court on error.

The principal questions discussed by counsel are: (1) Was the subscription for the stock in the National Bank by the officers of the Rich Hill Bank an ultra vires act? (2) Did the regular receipt by the Rich Hill Bank of dividends paid by the National Bank during the time that the stock was held for the benefit of the Rich Hill Bank estop it from denying its liability as a stockholder?

While the decisions of the several state courts are not in harmony upon these questions, the established rule of the federal courts is that where one corporation acquires stock of another corporation by subscription thereto or by original purchase as an investment, and not in payment of some antecedent debt, when the acquisition of such stock is foreign to the objects of the corporation and is not authorized by law, the contract by which the stock was acquired was ultra vires and void, and the receipt of dividends would not estop the corporation availing itself of the defense that the contract was void. California Bank

v. Kennedy, 167 U. S. 362, 17 Sup. Ct. 831, 42 L. Ed. 198; Concord First Nat. Bank v. Hawkins, 174 U. S. 364, 19 Sup. Ct. 739, 43 L. Ed. 1007; Robinson v. Southern Nat. Bank, 180 U. S. 295, 21 Sup. Ct. 383, 45 L. Ed. 536; First Nat. Bank v. Converse, 200 U. S. 425, 26 Sup. Ct. 306, 50 L. Ed. 537.

The powers of a corporation in these respects being governed by the law of the state creating it and defendant's corporate authority being acquired under the laws of Missouri, if the Supreme Court of that state has construed the Constitution and statutes of the state in these respects, the decision of that court is binding upon this. Decisions of that court have been cited by each party which it is claimed are authority on that subject. The decisions, without proper analysis, would seem to be somewhat in conflict.

In Anglo-American Land Mortgage & Agency Co. v. Lombard, 132 Fed. 721, 68 C. C. A. 89, this court had occasion to review the decisions of the Supreme Court of Missouri upon that subject, and it was held that the seeming conflict did not exist; that the decisions of the Supreme Court, when properly understood, were in harmony and divided into two classes, viz.: Those holding that where a contract by a corporation was ultra vires because not within its corporate powers but had been fully executed by both parties, nothing of an executory nature remaining to be done, what was thus done under the contract would not be undone at the suit of either party on the ground that it was ultra vires; the other class holding that, where such contract remained in part unexecuted and the corporation was called upon to perform the executory part, it was not estopped to interpose the defense of ultra vires. It is, however, urged that in the more recent case of Cass County v. Mercantile Town Mutual Ins. Co., 188 Mo. 1, 86 S. W. 237, the Supreme Court of Missouri has announced a different rule. While it is true that in that case the court discussed these questions in a manner which gives color to the present citation of the case, yet the decision seems to have turned upon the construction of a statute of Missouri, providing for the organization of town mutual insurance companies; the court holding that such a company was not limited to insuring the property of its members solely but might reinsure the property of a member of another such company which had been insured by the latter company, which was the character of contract there in question. While we are inclined to think that under the Constitution and laws of Missouri, as construed by the Supreme Court of that state, the officers of the defendant bank had no authority to bind the bank by a subscription to the stock of the Bates National Bank, and that the defendant bank is not estopped because of having received dividends from pleading the ultra vires character of the subscription contract, yet it is unnecessary to place the decision in this case upon that ground, as we think the judgment must be affirmed for another reason.

In the case of McDonald v. Dewey, 202 U. S. 510, 26 Sup. Ct. 731, 50 L. Ed. 1128, it was distinctly held that an absolute sale and transfer of stock of a national bank by a holder thereof could not subsequently be avoided and the transferror held liable for an assessment upon the stock, unless it was shown that at the time of the transfer

of the stock, not only that the bank was actually insolvent, but that the transferror of the stock knew of such insolvency, or had reason to believe at the time of such transfer that the bank was insolvent, and that such transfer was intended to evade liability. The court in the opinion say:

"We think it a proper deduction from the prior cases, and such we hold to be the law, that the gist of the liability is the fraud implied in selling with notice of the insolvency of the bank and with intent to evade the double liability imposed upon the stockholder by the national banking act. * * * The stockholder is not deprived of his right to sell the stock by the fact that the sale is made to an insolvent person, unless it be made with knowledge of the insolvency of the bank."

In this case the transfer of the stock was made more than seven months before the bank was declared insolvent by the Comptroller. There is no evidence tending to show that the financial condition of the bank at the date of the transfer of stock on February 16th was the same as that of September 20th, when the Comptroller declared it insolvent, and when, as per stipulation of the parties, it is said the bank was insolvent, and we do not think the court would be justified in assuming that because the bank was insolvent on September 20th therefore it was insolvent on February 16th, in the absence of evidence of some facts which would indicate that there had been no changed condition of the assets and liabilities of the bank during that period. Whether the bank became insolvent in September, because of the loss of some securities which had been taken between the date of the transfer of the stock in question in February and September 20th, whether its assets were depleted by some improvident speculation or investment by its officers between those dates, we do not know. There is no evidence tending to show the condition of the national bank from the time of its organization in September, 1902, until it was declared insolvent September 20, 1906. The books of the bank were undoubtedly in the custody of the receiver, and it was within his power to have given evidence in this respect.

For the reason that the petition failed to allege the insolvency of the national bank at the time of the transfer of the stock, and because there is no evidence showing its insolvency at that time, and no evidence to show that the Rich Hill Bank. or any of its officers, had knowledge of the insolvency of the national bank at the time of the transfer of the stock, or knowledge of facts which would put an ordinarily prudent person upon inquiry, in that respect, we think the court properly directed a verdict for the defendant; and the judgment is therefore affirmed.