### HODGES v. MERIWETHER.

#### No. 9211.

Circuit Court of Appeals, Eighth Circuit.

Jan. 14, 1932.

Arthur L. Adams, of Jonesboro, Ark., for appellant.

W. L. Pope, of Pocahontas, Ark. (Frank Pace, of Little Rock, Ark., on the brief), for appellee.

Before VAN VALKENBURGH, BOOTH, and GARDNER, Circuit Judges.

GARDNER, Circuit Judge.

Appellant's predecessor in office originally brought this action as one at law, to recover a 100 per cent. assessment on sixty shares of the bank stock of the First National Bank of Marked Tree, Ark., joining as defendants Myrtle Sharum Meriwether and J. J. Sharum, as joint administrators of the estate of T. J.

Sharum, deceased, and as individuals, and joining also J. B. Sexton and Mona M. Cade, the last two named being the transferees of the stock in question. The complaint was thereafter amended so as to allege the division of the real estate of the deceased between the heirs at law, and that the assets of the estate in the hands of the heirs were subject to a charge for the payment of the assessment, and on motion of plaintiff the cause was transferred to the equity side of the docket. The action was then dismissed as to the administrators of the estate of T. J. Sharum, deceased, and a separate trial granted as to the defendants J. J. Sharum and J. B. Sexton, and a separate trial was also granted as to the defendants Myrtle Sharum Meriwether and Mona M. Cade. The case seems then to have been prosecuted as a suit in equity against appellant, Myrtle Sharum Meriwether. The parties will be referred to as they appeared in the lower court.

The First National Bank of Marked Tree, Ark., was organized in 1917, with a capital stock of $50,000. T. J. Sharum was the owner of sixty shares of this stock of the par value of $6,000. He was president of the bank from the time of its organization until about the time of his death, which occurred January 9, 1923. At the time of his death, and for some months prior thereto, he was a mental incompetent, and acted only through his guardian and curator. He was a man of very substantial means, and at the time of his death owed no debts, and no claims were proved against his estate, and the administration was closed by final order of the probate court, which discharged the administrators February 25, 1925. The defendant Myrtle Sharum Meriwether, daughter of deceased, and one J. J. Sharum, grandson of deceased, were appointed joint administrators, and they were the sole heirs. Among the assets of the estate was this sixty shares of bank stock, which remained without transfer on the books of the bank until January 25, 1926, when it was reissued to the distributees of the estate, thirty shares being issued to each of the above-named heirs.

Shortly after the reissue of this stock to Mrs. Meriwether, she transferred her shares to her daughter, Mrs. Mona M. Cade, without consideration, and this transfer was entered on the books of the bank. On November 15, 1926, the bank was closed by order of the Comptroller of the Currency, and on January 22, 1927, an assessment of 100 per cent. was made upon the capital stock. This transfer is assailed by the plaintiff, as having been made for the fraudulent purpose of avoiding liability, and as colorable only, and that when made the defendant knew the bank was insolvent. The lower court entered decree in favor of the defendant and against the plaintiff, and, from this decree, this appeal is prosecuted, and we are asked to reverse the judgment of the lower court (1) because of alleged errors in admitting or rejecting evidence, and (2) because the judgment is against the preponderance of the evidence.

Rule 11 of this court provides that: "When the error assigned is to the admission or to the rejection of the evidence, the assignment of errors shall quote the full substance of the evidence admitted or rejected."

Rule 24 provides, inter alia: "When such error is as to the admission or rejection of evidence, the statement shall quote such evidence with the rulings thereon, giving pages of the printed brief where it occurs."

These rules have been flagrantly disregarded. The assignments referring to the rulings of the court on the admissibility of evidence are of the most general sort, and furnish no index by which the court may even determine where the rulings objected to are to be found in the record, nor do they apprise the court as to the nature of the evidence involved, or the objections interposed thereto. We have groped through the record, seeking for the rulings complained of, but they are not such as to impress us as erroneous, and we do not feel impelled to consider the questions as obvious errors. We must therefore decline to give this contention any further consideration.

Section 64, title 12, USCA, provides as follows: "The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock. The stockholders in any national banking association who shall have transferred their shares or registered the transfer thereof within sixty days next before the date of the failure of such association to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability."

The transfer here was made more than sixty days before the failure of the bank to meet its obligations, and hence the issues pre-

sented to the lower court were: (1) Whether the bank was insolvent at the date of the transfer of the stock; and (2) if the bank was insolvent at said time, did the defendant have knowledge of that fact, or did she have knowledge of such facts as would lead a reasonable person to believe that the bank was insolvent? A stockholder who knows or has reason to believe the bank insolvent cannot escape a stockholder's liability by transferring his shares to another person. Cooley v. Armstrong (C. C. A.) 35 F.(2d) 401; McDonald v. Dewey, 202 U. S. 510, 26 S. Ct. 731, 50 L. Ed. 1128, 6 Ann. Cas. 419; Stuart v. Hayden, 169 U. S. 1, 18 S. Ct. 274, 42 L. Ed. 639. If, however, such transfer is made in good faith, without knowledge of the transferor of the insolvency of the bank, and without reason to believe the bank insolvent, then the transferor would not be liable. McDonald v. Dewey, 202 U. S. 510, 26 S. Ct. 731, 50 L. Ed. 1128, 6 Ann. Cas. 419; Earle v. Carson, 188 U. S. 42, 23 S. Ct. 254, 47 L. Ed. 373; Fowler v. Crouse (C. C. A.) 175 F. 646; Vandagrift v. Rich Hill Bank (C. C. A.) 163 F. 823; Hubbell v. Houghton (C. C.) 86 F. 547, affirmed (C. C. A.) 91 F. 453.

■ The burden of proof was upon plaintiff, and the court held that the proof was not sufficient to show that the transfer in question was not made in good faith. The bank had had some financial difficulties as early as 1921, and the Comptroller in that year declared its capital impaired to the extent of $30,304.91. This impairment the directors of the bank made good by executing their note to the bank for that amount, which was accepted by the Comptroller's office. Subsequent to the death of T. J. Sharum, more than half of this note was paid by his estate. On January 31, 1924, a voluntary assessment of 65 per cent. was voted by the stockholders to restore impaired capital, and on April 17, 1924, the Sharum estate, which had not yet been closed, paid an assessment on the Sharum stock, amounting to $3,900. In the latter part of 1925, losses of the bank had been incurred to such an extent that the department found the capital impaired in the sum of $43,295.41. To cover this impairment of capital, a bond was tendered to the Comptroller of the Currency, dated January 18, 1926, conditioned that an assessment of the stock be deferred until December 1, 1926. It was signed by the seven directors, but not by the defendant, nor by J. J. Sharum. These directors qualified as being worth in the aggregate about $460,000, and the bond specifically provided that: "If an assessment of $43,295.41 is levied by the stockholders of the First National Bank of Marked Tree, Arkansas, and that amount is paid in full to said bank on or before December 1, 1926, then the obligation shall be void, otherwise, in full force and effect, and if the said assessment of $43,295.41 be levied by said stockholders and a part of such assessment only be paid to said bank, then this bond shall be binding only as to the part of such assessment as shall remain unpaid."

■ On November 14, 1926, an examination of the bank by the department showed an impaired condition, and the bank was closed November 15, 1926. On January 22, 1927, an assessment of 100 per cent. was made on the capital stock. The bank was a going concern at the time Mrs. Meriwether transferred her stock, and it remained open for more than ten months after the transfer. The court based its decision upon the good faith of the transfer, rather than upon the solvency of the bank. Mrs. Meriwether testified that she knew nothing about the making of the bond, and that she thought that, after she had paid the 65 per cent. assessment on her stock May 17, 1924, the bank's condition had steadily improved. She was not a resident of Arkansas, but lived in Louisiana during the time covered by these transactions. No one represented her when she transferred the stock to her daughter. She was then in Louisiana, and effected the transfer by writing two letters to the bank. It is urged that, because T. J. Sharum was coadministrator with the defendant, his knowledge should be attributable to her. Without considering what, if any, knowledge he may have had, it is to be observed that the action here is not against the defendant as administrator. That action was dismissed, and certainly the knowledge of a coadministrator could not be binding upon her in her individual capacity.

■ It is urged that under section 66, title 12, USCA, the defendant should be held liable because she received funds from the Sharum estate. But no lien, equitable or otherwise, attached to this property while it was the property of the estate, and it passed to her clear of any such lien. The bank remained open and was a going concern for nearly four years after the death of T. J. Sharum, and it remained open for nearly two years after the estate was closed and the administrators discharged. The rule announced by this court in Luce v. Thompson, 36 F.(2d) 183, has no possible application to the facts in this case. The finding of the trial court is presumptively correct. Quinn v. Union Nat. Bank (C. C.

A.) 32 F.(2d) 762; Southwest Pipe Line Co. v. Empire Natural Gas Co. (C. C. A.) 33 F.(2d) 248, 64 A. L. R. 1229; Lion Oil Refining Co. v. Albritton (C. C. A.) 21 F.(2d) 280; Kansas City Southern Ry. Co. v. May (C. C. A.) 2 F.(2d) 680; Road Improvement Dist. v. Missouri Pac. R. Co. (C. C. A.) 2 F.(2d) 340.

An examination of the testimony convinces us that the finding of the court is not against the preponderance of the evidence, and the judgment appealed from is therefore affirmed.