**JEFFREYS v. O'NEAL.**

No. 3420.

Circuit Court of Appeals, Fourth Circuit.
April 4, 1933.

Kenneth C. Royall, of Raleigh, N. C. (Allen Langston, of Raleigh, N. C., on the brief), for appellant.

M. T. Dickinson, of Goldsboro, N. C. (Dickinson & Freeman, of Goldsboro, N. C., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

H. C. O'Neal, receiver of the National Bank of Goldsboro, at Goldsboro, N. C., under appointment from the comptroller of the currency of the United States, brought suit against James T. Jeffreys and Kate J. Carmichael, to recover the sum of $1,300, the amount of an assessment for extra shareholders' liability on thirteen shares of stock in the bank. The following allegations were made in the declaration: The bank suspended business on December 19, 1930, and on January 23, 1931, the comptroller of the currency made an assessment and requisition upon the shareholders for 100 per cent. on the stock held or owned by them at the time of the bank's suspension, to be paid on May 15, 1931. Jeffreys was a director of the bank in April, 1930, and the owner of thirteen shares of stock standing in his name on the books of the bank at that time. In April, 1930, he indorsed his stock certificate to his sister, Mrs. Carmichael, but no new certificate of the stock was ever issued to her and no transfer was ever made on the books of the bank. At the same time Jeffreys resigned as a director of the bank. Both Mrs. Carmichael and the bank were then insolvent, and Jeffreys knew that she was insolvent and that the bank was insolvent, or had good ground to apprehend the failure of the bank, and made the indorsement and attempted transfer not in good faith but for the purpose of relieving himself from liability and assessment as the owner of the stock. The assessment remains unpaid despite demand upon the defendants.

Mrs. Carmichael answered the complaint, admitting liability. Jeffreys answered, alleging that the transfer had been actually consummated in good faith and denying liability. The case was submitted as to him to a jury upon the issue as to whether he transferred the stock on April 10, 1930, with knowledge of the impending failure of the bank. The receiver offered evidence to sup-

286

port the allegations of the complaint but neither Jeffreys nor his sister testified, nor was any testimony offered on their behalf, and the issue was decided in the affirmative and judgment was rendered against Jeffreys for $1,300 with interest from May 15, 1931.

The appellant filed a demurrer to the declaration in this court on the ground that it did not state sufficient facts to constitute a cause of action. The statute which creates the stockholder's liability (Federal Reserve Act of December 23, 1913, c. 6, § 23, 38 Stat. 273, 12 U. S. C. § 64 [12 USCA § 64]), provides:

"§ 64. *Individual Liability of Shareholders; Transfer of Shares.* The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock. The stockholders in any national banking association who shall have transferred their shares or registered the transfer thereof within sixty days next before the date of the failure of such association to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability; but this provision shall not be construed to affect in any way any recourse which such shareholders might otherwise have against those in whose names such shares are registered at the time of such failure."

It is pointed out that the allegations of the declaration in respect to Jeffreys' knowledge of the bank's condition are in the alternative, to wit: That "Jeffreys then knew that the said bank was insolvent, or then had good ground to apprehend the failure of said bank," and the argument is made that on demurrer the pleader must rest upon the weaker allegation, and so considered, the complaint is defective because good grounds to apprehend the failure is not equivalent to knowledge of impending failure. This court cannot look with favor upon so artificial and technical a point, raised for the first time after the case has reached the appellate court, especially as it is obvious that the defendant was advised of the nature of the case against him, and the question actually submitted to the jury was whether he had knowledge, as distinguished from good grounds to apprehend the condition of the bank.

■ We need not decide whether these two phrases are substantially equivalent one to the other when taken in consideration with the other allegations of the complaint, a barren question to decide, since a pleader usually takes the safe and easy path of following the words of the statute. It is clear that considered by itself, the complaint was sufficient, for it contained the allegation that no transfer of the stock was ever made on the books of the bank, and under the statute, shareholders in whose names stock is registered at the time of the failure of the bank are liable to assessment. Williams v. Stone (C. C. A.) 25 F.(2d) 831. It is useless also to decide whether such a defect, if it exists, is not cured by verdict and may not be raised on appeal under the modern practice, for the complaint was amended in this court, on motion of the appellee, so as to conform to the words of the statute. Permission to make such an amendment is within the discretion of the appellate court under the provisions of 28 U. S. C. § 777 (28 USCA § 777); Norton v. Larney, 266 U. S. 511, 45 S. Ct. 145, 69 L. Ed. 413; Smith v. McCullough, 270 U. S. 456, 46 S. Ct. 338, 70 L. Ed. 682; Taylor v. Anderson, 275 U. S. 431, 48 S. Ct. 144, 72 L. Ed. 354; Mims v. Reid (C. C. A.) 275 F. 177; and in such a case as this, the discretion will be liberally exercised.

■ At the close of the plaintiff's testimony in the District Court, the defendant moved for a judgment of nonsuit and was overruled, and this action of the court is assigned as error on the ground that the evidence did not show either that the failure of the bank was impending at the time of the stock transfer, or that the stockholder then had knowledge of such a condition. These matters were essential to the plaintiff's case because the evidence showed that the stock was not registered in the name of the stockholder at the time of the failure, but that the indorsed certificate had been delivered to the bank and the stock had been transferred to Mrs. Carmichael on its books. To this extent the evidence did not support the allegations of the narr.

■ The evidence of the bank's condition consisted of written reports of National Bank examiners, who had examined its affairs in the course of their official duties, and of correspondence about these reports between the directors of the bank and the comptroller of the currency. The capital of the bank was $100,000. A report of an examination on August 12, 1929, showed loans

of a large amount, in proportion to the resources of the bank, to the cashier and connections of his by blood or marriage. Comment was made upon the large amount of slow and doubtful paper and losses in current loans, including large and unwarranted loans to certain directors. The comptroller of the currency wrote to the directors of the bank under date of September 10, 1929, in regard to this report, calling attention to the fact that while the surplus and undivided profits shown by the books of the bank amounted to only $100,770.92, the total estimated losses and doubtful assets amounted to $148,164.43, and the slow assets to $164,065.06. The directors were warned that the bank was borrowing a sum considerably in excess of its capital, surplus, and undivided profits, and had a very large amount of liability to be met on demand or short notice; that the bank was in a serious condition, well known to the directors through reports and letters over a long period of time, so that they would have no occasion for surprise if the bank should reach such a state that they would be sued by shareholders or creditors, or that a receiver would be appointed. On October 8, 1929, an answer, signed by Jeffreys and the other directors, was sent to the comptroller, stating that careful consideration had been given to his letter and the examiner's report. On February 26, 1930, another examination was made, which also disclosed unsatisfactory conditions that were called to the attention of the board by a letter from the comptroller on March 25, 1930. This showed that the surplus and undivided profits carried on the books had been reduced to $51,629.40, while the estimated losses and doubtful assets amounted to $93,025.76, and the slow assets to $208,662.85. The letter pointed out that an impairment of capital would likely be reported at the time of another examination, and that it seemed to be imperative for the bank to be reorganized and the losses and doubtful assets entirely eliminated, and new capital obtained, for otherwise it was very doubtful whether the bank could continue to operate for any great length of time. There was a meeting of the board of directors on March 17, 1930, attended by Jeffreys. On March 29th, a few days after the date of the comptroller's last letter, Jeffreys resigned as a director of the bank, and on April 10, 1930, the stock was transferred from his name to that of his sister on the books of the bank. The bank closed on December 19, 1930, and it was quickly seen that an assessment on the stock of the shareholders was necessary, for on January 23d following, a 100 per cent. assessment was levied by the comptroller. This evidence undoubtedly tended to show that the bank was insolvent when Jeffreys resigned as a director and transferred his stock to his sister.

The same facts justified an inference on the part of the jury that at the time of the transfer, Jeffreys had knowledge of the true situation. It is urged on his behalf that he showed his faith in the bank because he continued to be a depositor from April to December, 1930, making daily deposits and maintaining an average balance between three and four thousand dollars. When the bank closed, however, his firm had on deposit only $361.04, which was more than offset by a note of $1,000 due the bank. These circumstances were relevant in determining the knowledge of Jeffreys when the transfer of stock was made, but they did not conclusively show his belief in the solvency of the bank. The jury might reasonably have inferred that he kept in close communication with the officials of the bank so that when it closed he owed the bank more than it owed him. Moreover, it is of much significance that he transferred the worthless stock to his sister, who does not respond to the comptroller's requisition, although she expressly admits her liability.

The provision of the act which conditions the extra shareholder's liability of a transferor of stock upon his knowledge of an impending failure must be given a meaning in harmony with the subject matter to which it refers. The solvency of a bank in active operation with outstanding loans must depend to a large extent upon the solvency of its debtors and their ability to pay what they owe, and upon the value of other assets which cannot be estimated with mathematical precision until the business of the bank is liquidated. Hence it is a reasonable interpretation of the statute to say that one has knowledge of the impending failure of a bank who has knowledge, or reasonable grounds to believe, that it is insolvent. Cooley v. Armstrong (C. C. A.) 35 F.(2d) 401. Section 23 of the Federal Reserve Act of December 28, 1913, 12 U. S. C. § 64 (12 USCA § 64), was not passed with the idea of making it easier than it had previously been under Rev. St. § 5151, 12 U. S. C. § 63 (12 USCA § 63), for a shareholder in a national bank to avoid the payment of an assessment on his stock if the bank should become insolvent. On the contrary, the law was made more stringent so that now a

transfer of stock made or registered within sixty days of the failure of the bank does not relieve the transferrer even though he acts with the utmost good faith. Transfers made before this period are still to be judged as they were under the pre-existing law, for it could not have been the intent of Congress to hamper the collection of assessments by imposing upon receivers the impossible burden of proving precise knowledge in the strict and literal sense of the words. Fletcher v. Porter (C. C. A.) 20 F.(2d) 23; Hodges v. Meriwether (C. C. A.) 55 F.(2d) 29.

The appellant also objects that it was error on the part of the court to admit, over the defendant's objection, the examiner's reports and the correspondence to which we have referred. It is alleged that their authenticity was not established, and that they were not competent evidence of the facts contained. Such documents are customarily kept on file in the bank as part of their business records, accessible to its officers and directors. The report of an experienced national bank examiner concerning the condition of a bank which he has examined should furnish the most reliable evidence of the true situation, and such a summary, supported by the evidence of the man who made it, and by the production of the books and papers upon which it was based, may be offered in evidence in strict accordance with recognized rules. There are circumstances under which the records of a business are the best evidence of a transaction and may be used in court in the absence of the maker if their identity is shown and their trustworthiness is circumstantially established. E. I. DuPont de Nemours & Co. v. Tomlinson (C. C. A.) 296 F. 634. We need not go so far in this case because only a general objection to the testimony was made, and so far as the record discloses, any defect in the proof might easily have been corrected at the time of the trial if it had been specifically pointed out. In Noonan v. Caledonia Mining Co., 121 U. S. 393, 400, 7 S. Ct. 911, 915, 30 L. Ed. 1061, it is said: "The rule is universal, that where an objection is so general as not to indicate the specific grounds upon which it is made, it is unavailing on appeal, unless it be of such a character that it could not have been obviated at the trial. The authorities on this point are all one way. Objections to the admission of evidence must be of such a specific character as to indicate distinctly the grounds upon which the party relies, so as to give the other side full opportunity to obviate them at the time, if, under any circumstances, that can be done." See, also, Wigmore on Evidence, § 18.

Finally it is assigned as error that the District Judge did not correctly instruct the jury as to the meaning of the word "impending." The jury were at first charged in effect that an impending failure did not necessarily mean an immediate failure, or one within a day or a week, and that a failure at some remote period of time would answer the description if the condition confronting the bank at the time under consideration was such that it was bound to close sooner or later in a reasonable length of time. Exception was taken to this instruction and the jury were subsequently called back and told to disregard it, and were then instructed in effect that if at the time the transfer was made, the insolvency was imminent, threatening or hanging over the bank, and the defendant had knowledge of it, the jury should answer the issue submitted to them in favor of the receiver. It cannot be said that this instruction was unfair to the defendant or that it incorrectly stated the law.

The judgment of the District Court is affirmed.