**NATIONAL REFINING CO. et al. v. PENN-SYLVANIA PETROLEUM CO.**

No. 9691.

Circuit Court of Appeals, Eighth Circuit.
Aug. 12, 1933.

Rehearing Denied Sept. 21, 1933.

Harry L. Jacobs, of Kansas City, Mo. (Fred Bellemere, I. J. Ringolsky, William G. Boatright, Daniel S. Millman, and Ringolsky, Boatright & Jacobs, all of Kansas City, Mo., on the brief), for appellants.

R. R. Brewster, of Kansas City, Mo., for appellee.

Before KENYON and GARDNER, Circuit Judges, and DEWEY, District Judge.

GARDNER, Circuit Judge.

This is an appeal from the decree dismissing an involuntary petition in bankruptcy filed by appellants against appellee, Pennsylvania Petroleum Company.

The acts of bankruptcy alleged in the petition are: (1) That while the appellee was insolvent, and within four months next preceding the filing of the petition, a receiver was appointed and put in charge of its property; and (2) that, while insolvent and within four months next preceding the filing of the petition, it made preferential payments to certain of its creditors with intent to prefer such creditors over others.

The appointment of a receiver was made by the District Court of the United States, for the Western District of Missouri, on the 21st of December, 1931, in a suit brought by Dean O. Howe against the Atlantic, Pacific & Gulf Oil Company, a corporation, and the Pennsylvania Petroleum Company, a corporation, and others, the plaintiff in that suit alleging that he was a creditor of the Atlantic, Pacific & Gulf Oil Company.

The Pennsylvania Petroleum Company is a Missouri corporation, organized in 1918 by J. E. Williams, who, until the receivership, was its president and managing officer. In 1929 the stockholders of the Pennsylvania Petroleum Company transferred their stock to the Atlantic, Pacific & Gulf Oil Company, receiving in lieu thereof stock in said last-named company. The Atlantic, Pacific & Gulf Oil Company, directly and through several other subsidiary corporations, operated various service stations, a refining and cracking plant, and sold, installed, and serviced oil burners. Appellee's business has been that of compounding, blending, and selling lubricating oils and greases.

J. P. Howe was the president, the largest stockholder, and a director of the Atlantic, Pacific & Gulf Oil Company. Two of his sons, one of whom was Dean O. Howe, were officers of the company. Nelson E. Johnson was vice president, director, stockholder, creditor, and general counsel of the parent company and all its subsidiaries.

On November 12 and 13, 1931, the directors of appellee, at a meeting at which the financial affairs of appellee and of the Atlantic, Pacific & Gulf Oil Company were discussed, adopted a resolution which, after reciting that Dean O. Howe, a creditor of the Atlantic, Pacific & Gulf Oil Company, was about to bring suit for the appointment of a receiver for it and all of its subsidiaries, and that the purpose of the receivership was to operate the companies as going concerns, and that while wholly solvent, suits were being threatened by various creditors of appellee, and that it was deemed to the best interest of appellee that it enter its appearance in the action and consent to the appointment of receiver, specifically authorized the president or vice president of appellee, if in his judgment it became necessary so to do, to file an answer in the receivership suit on behalf of appellee, admitting the allegations of the bill of complaint and consenting that plaintiff therein might have the relief prayed, including the appointment of a receiver. At the time at least one creditor was threatening suit against appellee.

The bill of complaint in the receivership suit alleged that the Atlantic, Pacific & Gulf Oil Company had assets far in excess of its liabilities; that its subsidiaries, including appellee, had been treated, handled, used, and operated as departments, agents, adjuncts,

916

and parts of the parent corporation, and that all had been to a large degree handled, used, and carried on as one business under one management; that during the preceding eighteen months industrial conditions had been unfavorable to the operation of the business of defendants; that they could not procure loans with which to carry on business, and were practically without working capital; that each of the defendants was threatened with the institution of several independent suits or actions, and that they were without resources to prevent the entry of numerous judgments on such claims and the levying of executions upon their various assets; that the Atlantic, Pacific & Gulf Oil Company and its subsidiaries had established a valuable business; that their organizations and connections formed the basis for successful and profitable operation during normal times; that defendants had no ready cash to pay their current expenses or to meet their maturing obligations as they fell due; that too large a portion of their assets were invested in real estate and fixed assets not readily salable, though of sound value, and that, unless protected by the court, there would inevitably be further defaults in the performance of their obligations, and the value of their assets would be sacrificed by untimely sales and foreclosures of mortgages, although by proper care such value ought to be preserved; that, if the assets were marshaled and conserved, and the business operated for the benefit of all creditors, the assets would produce much more than as a result of the independent enforcement of claims of creditors. The value of the assets of the Atlantic, Pacific & Gulf Oil Company was alleged to be $2,066,808, and its liabilities approximately $449,317.34. The appointment of a receiver to conserve assets, carry on business, and sell the property for the benefit of creditors was sought, together with an injunction to restrain the creditors from interfering with the possession of the receiver or attempting to enforce their claims.

On December 21, 1931, on consent of all the defendants in that suit a receiver was appointed. The order of appointment was responsive to the prayer of the bill of complaint. Nelson E. Johnson was appointed receiver. He had prepared the answer for the defendants, admitting the allegations of the complaint, and consenting to the appointment of a receiver, and he likewise prepared the order appointing himself receiver.

The note upon which suit was brought was a demand note, dated October 31, 1931, for $5,000, executed by the Atlantic, Pacific & Gulf Oil Company.

On December 23, 1931, two days following the appointment of the receiver, the petitioning creditors filed their involuntary petition in bankruptcy against appellee. The receiver, on leave of court, filed a verified answer, as did also the appellee, denying the allegations of insolvency, and the commission of the alleged acts of bankruptcy.

On the 24th or 25th of December, 1931, Nelson E. Johnson, who had already been named as receiver, prepared an involuntary petition against the Atlantic, Pacific & Gulf Oil Company, in which the act of bankruptcy alleged was the appointment of the receiver while the corporation was insolvent, also preferences to certain creditors while insolvent. These papers were filed December 30, 1931, but no action was ever taken upon them.

On the issue joined by the answer of the defendant to the involuntary petition in bankruptcy, trial was begun by a jury, but the jury disagreed, and the parties then stipulated in writing for a trial to the court without a jury. The court found that neither at the time of the commission of the alleged acts of bankruptcy nor at the time of the filing of the petition was the appellee insolvent, and dismissed the petition.

While, as has been observed, the allegations of the petition charge as acts of bankruptcy the appointment of the receiver, and the preferential payments to certain creditors with intent to prefer such creditors over others, appellants abandoned this latter alleged act of bankruptcy and offered no evidence to support it, leaving only the one alleged act of bankruptcy, to wit, that, while appellee was insolvent, a receiver was appointed. It is urged by appellants, however, that the facts show a transfer of appellee's assets with intent to hinder, delay, or defraud its creditors, and it is contended on this appeal that (1) the alleged bankrupt conveyed or transferred all of its assets with intent to hinder, delay, or defraud its creditors, and therefore such assets could not be counted in determining insolvency under the Bankruptcy Act; and (2) that even though the assets in the hands of the receiver could be counted in determining insolvency, nevertheless, under the entire record, the alleged bankrupt was conclusively shown to be insolvent.

Bankruptcy Act, § 3, as amended by Act of May 27, 1926 (11 USCA § 21), provides that acts of bankruptcy by a person shall consist of his having "(1) conveyed,

transferred, concealed, or removed, or permitted to be concealed or removed, any part of his property with intent to hinder, delay, or defraud his creditors, or any of them; or (2) transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors; or (3) suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and not having at least five days before a sale or other disposition of any property affected by such preference vacated or discharged such preference; or (4) suffered, or permitted, while insolvent, any creditor to obtain through legal proceedings any levy, attachment, judgment, or other lien, and not having vacated or discharged the same within thirty days from the date such levy, attachment, judgment, or other lien was obtained; or (5) made a general assignment for the benefit of his creditors; or, while insolvent, a receiver or a trustee has been appointed, or put in charge of his property; or (6) admitted in writing his inability to pay his debts and his willingness to be adjudged a bankrupt on that ground."

As has been observed, the petition charged that, while said alleged bankrupt was insolvent, a receiver was appointed. There was no allegation in the petition to indicate that the case was to be tried on an issue of fraudulent transfer or conveyance under the first subdivision of the statute. True, at the end of the trial appellants presented certain written requested declarations of law, embracing that theory, but no request was made to amend the petition so as to charge such an act of bankruptcy, and on this appeal it is urged by appellee that this question is not properly before the court. It appears from the lower court's opinion that it passed upon the question, although with some reluctance. It is said in the court's opinion: "Clearly the petitioning creditors sought to charge an act of bankruptcy under subdivision 4, of section 21 of Title 11, U. S. C."

 This court has been inclined to sanction a liberal rule respecting the granting of amendments to pleadings in support of the judgment of the lower court. El Dorado Refining Co. v. Lientz (C. C. A. 8) 7 F.(2d) 814; United Kansas Portland Cement Co. v. Harvey (C. C. A. 8) 216 F. 316; Haley v. Kilpatrick (C. C. A. 8) 104 F. 647; Schmidt v. United States (C. C. A. 8) 63 F.(2d) 390, 392.

In the last-cited case it is said: "Where the trial court receives evidence without objection, the pleadings will, on appeal, be presumed to have been amended if such amendment is necessary to support the judgment, and this court may presume the pleadings to have been amended to conform to the proof, or will permit an amendment in this court where the record so warrants."

This rule, however, should not be applied where injustice may result. Appellants alleged specific acts of bankruptcy, and it is impossible to determine from the record whether appellee tried the case on any issues other than those tendered by the pleadings. Under such circumstances, to treat the petition as amended would be to presume a substantial change in the claims of appellants, creating new issues which it cannot be said appellee met or attempted to meet. Such an amendment, presumed or otherwise, would not be in furtherance of justice, and the rule cannot be applied unless it is clear that the opposite party was not prevented from making a full and fair showing on the issue raised by such amendment. In the instant case the rule is not invoked for the purpose of sustaining the judgment of the lower court, but rather for the purpose of reversing that judgment.

In Re Ambrose Matthews & Co. (C. C. A. 3) 236 F. 539, 540, the petition charged as an act of bankruptcy that the corporation appointed trustees to collect outstanding accounts, to exercise the powers of the board of directors, and to wind up its affairs, and to divide its assets among the creditors. In the course of the opinion the court said: "With regard to the other contention on behalf of the appellants—that the foregoing instrument conveyed or transferred the bankrupt's property with intent to injure, delay, or defraud its creditors—it is only necessary to say that no such charge is made by the petition."

 General Order in Bankruptcy No. 11 (11 USCA § 53) provides: "The court may allow amendments to the petition and schedules on application of the petitioner. Amendments shall be printed or written, signed and verified, like original petitions and schedules. If amendments are made to separate schedules, the same must be made separately, with proper references. In the application for leave to amend, the petitioner shall state the cause of the error in the paper originally filed."

Petitioner on application to amend is required to show diligence and that the interest of justice requires such amendment. Of course, if the trial court on an application

by the petitioner allows the amendment without requiring compliance with the general order, its action in so doing will not be reviewed, unless the court abused its judicial discretion. In re Yellow Motor Co. (C. C. A. .8) 34 F.(2d) 118. But, in the instant case, no application to amend was presented to the lower court, and we cannot say that the issue was tried in that court. We are therefore of the opinion that appellants should be restricted to the issues raised by their petition. But, if we should indulge the presumption that the petition should be deemed to have been amended, the amendment could not be considered as made prior to the date of the trial, which commenced June 22, 1932. This was more than four months after the commission of the alleged act of bankruptcy. Such an amendment would allege an entirely new act of bankruptcy from that alleged in the original petition, and it could not relate back to the date of filing the petition. Hovland v. Farmers' State Bank (C. C. A. 8) 10 F.(2d) 478; In re Yellow Motor Co. (C. C. A. 8) 34 F.(2d) 118; In re Fuller (C. C. A. 2) 15 F.(2d) 294; In re Diamond Fuel Co. (C. C. A. 2) 283 F. 108; In re Condon (C. C. A. 2) 209 F. 800; In re Havens (C. C. A. 2) 255 F. 478; In re Haff (C. C. A. 2) 136 F. 78; Walker v. Woodside (C. C. A. 9) 164 F. 680; In re Interstate Oil Corp. (C. C. A. 9) 63 F. (2d) 674, 675; In re Brown Commercial Car Co. (C. C. A. 7) 227 F. 387.

As said by the Circuit Court of Appeals of the Ninth Circuit in In re Interstate Oil Corp., supra: "If the petition is merely an amended petition alleging acts of bankruptcy which occurred within four months before the original petition was filed, the amended petition relates back to the time of the filing of the original petition and is sufficient. This would not be the case if a new act of bankruptcy were relied upon or a new petition were filed."

We must therefore decline to consider the issue sought to be raised by appellants as to this alleged act of bankruptcy.

It is clear that a receiver was appointed two days before the filing of the involuntary petition in bankruptcy. If at that time the appellee was insolvent, then the petition in bankruptcy should have been sustained; otherwise it should have been dismissed. On this issue appellants had the burden of proof to establish insolvency. Smith v. Brownsville State Bank (C. C. A. 8) 15 F. (2d) 792; International Shoe Co. v. Smith-Cole, Inc., (C. C. A. 10) 62 F.(2d) 972. The lower court found that appellee was solvent, and that finding of the court is presumptively correct, and, if sustained by substantial evidence, should not be disturbed, unless serious factual mistake or obvious legal error appears. Bachman v. McCluer (C. C. A. 8) 63 F.(2d) 580; Chicago Bank of Commerce v. Carter (C. C. A. 8) 61 F.(2d) 986; Coder v. Arts (C. C. A. 8) 152 F. 943, 15 L. R. A. (N. S.) 372; Woods-Faulkner & Co. v. Michelson (C. C. A. 8) 63 F.(2d) 569; Conqueror Trust Co. v. Fidelity & Deposit Co. (C. C. A. 8) 63 F.(2d) 833.

Prior to the amending act of May 27, 1926, the appointment of a receiver was not an act of bankruptcy, unless the receiver was appointed "because of insolvency." Newsome Valve Co. v. Crown Tire & Rubber Co. (C. C. A. 8) 279 F. 569; Johansen Bros. Shoe Co. v. Alles (C. C. A. 8) 197 F. 274; Geo. M. West Co. v. Lea, 174 U. S. 590, 19 S. Ct. 836, 43 L. Ed. 1098. By the amending act of May 27, 1926, however, the Act of Bankruptcy was amended to read, "while insolvent, a receiver or a trustee has been appointed, or put in charge of his property." Bankr. Act § 3a (5), as amended, 11 USCA § 21 (a) (5). The ground on which the receiver was appointed is therefore not material. If a person is insolvent, as that term is defined in the Bankruptcy Act, and by his consent or otherwise a receiver is appointed for or put in charge of his property, by any court except a court of bankruptcy, he is subject to be adjudged a bankrupt. The issue presented is therefore whether at the time of the appointment of the receiver there was insolvency as defined in the Bankruptcy Act. Standard Accident Ins. Co. v. E. T. Sheftall & Co. (C. C. A. 5) 53 F.(2d) 40. The insolvency referred to must have existed at the time of the appointment of the receiver, and not, as argued by appellants, have resulted from such appointment. The lower court made a general finding that the appellee was not insolvent at the time of the filing of the petition, nor at the time of the alleged commission of the act of bankruptcy. In findings of fact filed separately, it found the value of the assets to have been $325,000, and the amount of the liabilities $230,000. While these findings are attacked as not sustained by the evidence, we think the grounds of attack are untenable. It is contended that the bill of complaint for the appointment of a receiver alleged insolvency, and that appellee admitted insolvency by its answer to the bill of complaint. The bill of complaint, however, does not allege insolvency within

the definition of the Bankruptcy Act. It sets out an involved financial condition and an inability to meet debts as they fell due, and that creditors were threatening suit. It does not, however, allege an insufficiency of assets at a fair value to pay its debts. A person is insolvent under the Bankruptcy Act when the aggregate of his property is not sufficient at a fair valuation to pay his debts. An inability to pay debts as they mature in the usual course of business is not insolvency within the meaning of the Bankruptcy Act. United States v. Oklahoma, 261 U. S. 253, 43 S. Ct. 295, 67 L. Ed. 638; United States Fidelity & Guaranty Co. v. Strain, 264 U. S. 570, 44 S. Ct. 334, 68 L. Ed. 854; Strain v. United States Fidelity & Guaranty Co. (C. C. A. 8) 292 F. 694; In re Utrecht Coal Co. (C. C. A. 2) 63 F.(2d) 745.

It is urged by appellants that the filing of the involuntary petition by Johnson established the insolvency of appellee. This petition alleged insolvency of the Atlantic, Pacific & Gulf Oil Company, but said nothing of appellee's solvency, and there is no evidence that Johnson was authorized by the appellee to file such a petition nor to make such an admission. Manhattan Rubber Mfg. Co. v. Lucey Mfg. Co. (C. C. A. 2) 5 F.(2d) 39. The evidence as to the value of appellee's assets was conflicting. No good purpose would be served by setting forth the details of the testimony upon which the court based its findings. There was sufficient substantial evidence to sustain the finding that the value of the assets exceeded the amount of the liabilities; and, the alleged act of bankruptcy consisting of "while insolvent a receiver or a trustee has been appointed," the court committed no error in refusing to exclude the value of the assets taken over by the receiver. Of necessity, the evidence as to the value of the various assets took a wide range, and from that evidence the lower court was in position to draw inferences for which this court should not substitute its own. In the absence of insolvency, the appointment of a receiver was not an act of bankruptcy.

We pretermit as unnecessary for disposition of the appeal a consideration of the contention of appellee that the petitioning creditors could not maintain the involuntary bankruptcy proceeding because they had received preferential payments which they had not surrendered.

We are satisfied the record shows no prejudicial error, and the judgment appealed from is therefore affirmed.