## ARMSTRONG v. McADAMS et al.
### No. 9872.

Circuit Court of Appeals, Eighth Circuit.
June 27, 1934.

Ras Priest, of Newport, Ark. (Ira J. Mack, of Newport, Ark., on the brief), for appellant.

Arthur L. Adams, of Jonesboro, Ark. (N. F. Lamb, of Jonesboro, Ark., on the brief), for appellees.

Before SANBORN and WOODROUGH, Circuit Judges, and DEWEY, District Judge.

WOODROUGH, Circuit Judge.

J. W. Armstrong, as receiver of the First National Bank of Jonesboro, Ark., a national banking association, sued H. H. McAdams and C. W. Pittinger as stockholders of the bank to enforce liability for a stock assessment of 100 per cent. duly made by the Comptroller. 12 USCA § 64. This appeal is taken from a decree dismissing the suit at the cost of the receiver; the purpose of the receiver being to fasten the liability upon H. H. McAdams.

The allegations of the bill of complaint material for present consideration are that H. H. McAdams became the owner of 306 shares of the capital stock of the First National Bank of Jonesboro of the par value of $25 each, and on or about June 1, 1925, made a purported sale of the shares of stock to one C. W. Pittinger; that C. W. Pittinger was at the time insolvent and financially irresponsible, and that H. H. McAdams was at the time solvent; that when the transfer was made the bank was insolvent and that the said H. H. McAdams and C. W. Pittinger knew, or in the exercise of ordinary care could or should have known, that the bank was insolvent and in a failing condition, and that the purported transfer was made with the intent to evade the liability imposed by law upon stockholders.

Issue having been joined by answer, the court found upon trial of the cause that the contract of sale by H. H. McAdams to C. W. Pittinger of the 306 shares of stock in the First National Bank of Jonesboro was executed on or about May 1, 1925, and upon a substantial and sufficient consideration, and that McAdams at the time the contract of sale of the stock was executed had no knowledge or notice of the insolvency or impending failure of the bank. The court's conclusion of law was that the evidence failed to establish either the insolvency of the First National Bank on the date of the transfer of the stock in question, or any knowledge or notice on the part of the appellee McAdams of impending insolvency or failure of the bank when the stock was sold.

The only assignment of error which we deem it necessary to discuss is to the effect that the findings of the trial court are against the weight of the evidence.

It appears that Mr. McAdams delivered the stock in question to Mr. Pittinger on May 1, 1925, and that as consideration for the transfer of the stock Mr. Pittinger paid Mr. McAdams $1,250 in cash, gave a note for a like amount, canceled a debt of $1,400 then owing by Mr. McAdams to Mr. Pittinger, and undertook to pay an assessment of 50 per cent. upon the stock. The bank was closed by reason of insolvency on June 4, 1926, about thirteen months afterwards. Very extensive testimony was taken upon the questions whether the bank was insolvent at the time of the stock transfer; to what extent Mr. McAdams had knowledge of the bank's condition; the insolvency or responsibility of Mr. Pittinger; and whether there was a good-faith sale or a mere attempt to defeat statutory stockholders' liability.

The receiver presented a very thorough analysis of the condition of the bank as it must have been in May, 1925, at the time of the transfer. Studying the figures and looking back upon the records which picture the condition as of that date, it does seem now, in retrospect, with the light accumulated through intervening years, that it might even then have been forecast without extraordinary prescience that the bank would fail. The conditions were to a large extent present that ultimately, in the course of time, developed into insolvency and receivership; there were frozen assets and bad, slow, and doubtful loans; heavy borrowings by the bank and criticisms from the examiners. On the other hand, many circumstances were brought out which point to the transfer having been made in good faith by Mr. McAdams, without any notice or thought of impending failure of the bank, and tending to refute liability on the part of Mr. McAdams. Hodges v. Meriwether, 55 F.(2d) 29, 86 A. L. R. 52 (C. C. A. 8); McDonald v. Dewey, 202 U. S. 510, 26 S. Ct. 731, 50 L. Ed. 1128, 6 Ann. Cas. 419; Earle v. Carson, 188 U. S. 42, 23 S. Ct. 254, 47 L. Ed. 373; Fowler v. Crouse (C. C. A.) 175 F. 646; Vandagrift v. Rich Hill Bank (C. C. A.) 163 F. 823.

It appears that he had accumulated his stock through four different purchases, the first in 1918, the last 123 shares as late as 1924. He named Mr. Pittinger in the transfer which he executed, but it was his understanding that there were certain other men known to him and who were of ample responsibility who really intended to take the stock, and he understood they were acquiring the control of the bank. Nor was Mr. Pittinger shown to have been irresponsible at the time he bought the stock. On the contrary, he appears to have had resources outside of the $3,900 he paid on his purchase. So that on the whole, Mr. McAdams may well have believed that the transfer of his stock would result in bringing new interests and strength to the bank. He continued to manifest his faith in the institution by depositing his own money there, and through his influence a fund of more than $6,000 in which he had a half interest was kept deposited in the bank up to the close; over $3,000 of the fund being so deposited a few days before the failure. Although the bank was being subjected to examination every three months, the bank examiner, so far from causing the operation of the business of the bank to be stopped, gave assurances according to numerous witnesses that its condition was sound and good. An assessment against the stockholders had been directed in January, before the transfer in question, but the assessment was to be only for 50 per cent.; that amount being considered sufficient to restore the bank's capital. Mr. McAdams testified: "The closing of the First National Bank came to me as an absolute shock; I hadn't the slightest idea that it was going to close its doors."

▇▇▇ We do not deem it necessary to elaborate the testimony taken on the issues which we have carefully examined. The burden of proof was upon the receiver, and we are satisfied that the findings of the trial court were not against the weight of the evidence and the conclusion and judgment are right. National Refining Co. v. Pennsylvania Petroleum Co. (C. C. A.) 66 F.(2d) 914, 919; Conqueror Trust Co. v. F. & D. Co. (C. C. A.) 63 F.(2d) 833; Bachman v. McCluer (C. C. A.) 63 F.(2d) 580; Woods-Faulkner & Co. v. Michelson (C. C. A.) 63 F.(2d) 569; Chicago Bank of Commerce v. Carter (C. C. A.) 61 F.(2d) 986; Karn v. Andresen (C. C. A.) 60 F.(2d) 427; Hodges v. Meriwether (C. C. A.) 55 F.(2d) 29, 86 A. L. R. 52.

It would seem from the record that the case was tried as a suit in equity though it has been held that a suit by the receiver of a national bank to recover the whole of a 100 per cent. stock assessment from a stockholder must be at law. Aufdenkamp v. L'Herrison (C. C. A.) 56 F.(2d) 344; Jeffreys v. O'Neal (C. C. A.) 64 F.(2d) 284; Casey v. Galli, 94 U. S. 673, 24 L. Ed. 168; Germania National Bank v. Case, 99 U. S. 628, 25 L. Ed. 448; Kennedy v. Gibson, 8 Wall. 498, 19 L. Ed. 476; United States v. Knox, 102 U. S. 422, 26 L. Ed. 216; Hale v. Allinson, 188 U. S. 56, 23 S. Ct. 244, 47 L. Ed. 380. But as the parties appear to have acquiesced or consented, no question of the federal jurisdiction being involved, and as we have examined and passed upon the evidence and approved the judgment, we express no opinion as to the form of the trial procedure. Twist v. Prairie Oil & Gas Co., 274 U. S. 684, 47 S. Ct. 755, 71 L. Ed. 1297.

Affirmed.